[Civ. No. 6303.   Third Appellate District.—December 31, 1940.]

WESTERN MACHINERY COMPANY (a Corporation), Appellant, v. RAY GRAETZ et al., Defendants and Respondents; PLACER COUNTY TITLE COMPANY (a Corporation) et al., Interveners and Respondents.

Arthur P. Shapro and Harry A. Block for Appellant.

F. H. Bowers for Respondents.

JONES (G. L.), J., *pro tem.*—Plaintiff, in July, 1937, leased to The Mack Mining Company a certain piece of mining machinery known as a "classifier", the lease or "Rental Agreement", as it was headed, being in writing, but not recorded.

It was specified in the document that the classifier was "to be used at the Mack Mining Company property" situate in Placer County, the property belonging to the defendants herein and then in possession of the Mining Company under a bond and lease. The rental rate of the classifier was fixed as $275 for the first month and $150 for each subsequent month.

After the execution of the lease, a conversation was held between the representatives of the plaintiff and of the Mining Company, in which the representative of the plaintiff informed the Mining Company's agent that it was the policy of the plaintiff, after rentals had been paid on a machine and "the rentals were paid right up to date" to allow, as credit, 100 per cent of the initial payment, then 75 per cent of the other rentals paid, if it was desired to purchase the machinery. The selling price of the machine was given as $700. No testimony was given as to any reply by the Mining Company's agent, or of any notice given by that company, showing an intent to purchase the machinery on the terms and conditions stated.

The initial payment of $275 was paid, followed later by a payment of $150, and then, on November 16, 1937, and after

a lapse of two months, the sum of $300 was remitted, making a total of $725, which would have created a credit of $612.50 in favor of the Mining Company if it desired to purchase the property, leaving a balance of $87.50 still to be credited on the next monthly rental to be paid. Neither the next rental payment nor the sum of $87.50 was paid.

The machinery was placed and used on the real property. By the terms of the lease, the machinery would retain its character of personal property, notwithstanding the manner in which it might be annexed to realty.

On October 29, 1937, the owners of the real property, being the defendants in this action, brought an action against the lessees of the premises to quiet their title to the land and to the mining machinery situate on it. The Machinery Company was not made a party to this action, but, in the following month, knowledge that such an action had been commenced was acquired by the Company. In April, 1938, the owners of the premises were given judgment quieting their title to the land and to the mining machinery located on it.

In the latter part of March, 1938, demand for the classifier was made upon defendants in this action by plaintiff, and in April following, two further demands were made. On May 6, 1938, a loan for $2,020 was negotiated between these defendants and the interveners, and, as security, a deed of trust covering the real property, together with "all mining machinery, equipment and fixtures, in or about said real property" was executed by defendants, granting the property to the Placer County Title Company, as Trustee—the Finance Company of Nevada and Placer Counties being designated as the Beneficiary. The loan was made without knowledge on the part of interveners of plaintiff's claim to the classifier.

This action brought by plaintiff to recover the machinery was commenced on July 8, 1938.

In the trial court it was decreed (1) that the plaintiff is not the owner of and is not entitled to the possession of the machinery, (2) that the rights of the interveners are superior to those of plaintiff and that the "classifier" is a part of the real property.

█ Assuming that the conversation concerning the purchase of the classifier constituted an offer on the part of the plaintiff to sell it to the Mining Company, did the offer ripen into an agreement binding on the plaintiff? The written con-

tract between the plaintiff and the Mining Company was the rental agreement, and, without question, this contract was not abrogated or terminated by any of the language used in the conversation—in fact, any right to purchase depended on the continuance of the lease. This latter right, if given, would have resulted in a modification of the rental agreement, but not in a novation. That agreement could have been "altered by a contract in writing or by an executed oral agreement and not otherwise." (Sec. 1698, Civ. Code.) In its findings, the trial court found that there was "still due under the oral sale contract" the sum of $87.75. It must, therefore, be conceded that the alleged oral agreement was not fully executed, was not therefore legally effective, and the rental agreement stands without alteration. The contention of the respondents to the effect that there existed a conditional sales contract between the parties cannot therefore be sustained, and the rental agreement, alone, is to be considered in determining the contractual relations of the parties who executed it, or the rights of others, which rights may have arisen in the course of its execution.

Not being a conditional sales contract, recordation of the agreement was not required by the provisions of section 2980 of the Civil Code. In that section, no reference is made to "leases" of mining machinery, but it is specifically provided that "every conditional sales contract of equipment and machinery used or to be used for mining purposes, must be acknowledged . . . and must be recorded".

We have, however, in this case, a situation in which there existed a lease of personal property of a character which called, in effect, for its placement and use on land worked as a mine. But for the provisions of the lease, it would become a part of the realty when so placed and used. Section 1158 of the Civil Code provides that "any instrument . . . affecting the title to or possession of real property may be recorded under this chapter". This lease is one coming within the scope of section 1158, for recordation of such an agreement would be for the protection not only of the owner leasing the personal property, but also of the innocent encumbrancer. (*Bell* v. *Mortgage Guar. Co.,* 109 Cal. App. 203 [292 Pac. 660].)

The failure to include "leases" of mining machinery in the provisions of section 2980 of the Civil Code does not

mean that the legislature was changing the rule enunciated in effect in the case of *Oakland Bank of Savings* v. *California P. B. Co.,* 183 Cal. 295 [191 Pac. 524]. While, in that case, a conditional sale was involved, yet the doctrine announced would apply to a lease of the character here under consideration.

In case of an unrecorded lease of personal property to be attached to realty, the fact of non-recordation would not of itself be a defense to a bona fide encumbrancer as would be the situation were a conditional sales contract involved, but the proof of the existence of notice would still be necessary. The interveners are found to have had no knowledge of plaintiff's claim, by recorded notice or otherwise, and we would hold that, the personalty having been affixed to the realty, the title of the plaintiff would be subject to the lien of the interveners created by the deed of trust taken by them in good faith and without notice of the lease.

As to the owners of the land upon which the machinery was placed, their position differs from that of interveners. No interest in the affixed property is shown to have been gained by them and its character as personal property continued as to them. (*Byron Jackson Iron Works* v. *Hoge,* 49 Cal. App. 700 [194 Pac. 45].)

The defense of laches pleaded by the respondents will .not lie, as this action is one of law. (*Brownrigg* v. *De Frees et al.,* 196 Cal. 534 [238 Pac. 714].)

We deem unnecessary a discussion of other questions presented, as a review of them would not result in a change of the conclusions we have indicated.

The judgment is reversed, with instructions to the trial court to adjudge plaintiff to have the title to the machinery, subject to the rights of interveners by virtue of their deed of trust. Each party to pay its own costs.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied on January 30, 1941.