[Civ. No. 5510. Fourth Dist. Jan. 29, 1957.]

J. P. MADISON, Plaintiff and Appellant, v. L. M. MOON, Defendant and Appellant; W. T. NORMAN et al., Respondents; S. E. CHIAPELLA, Intervener and Appellant.

Richardson & Henderson for Plaintiff and Appellant.

P. E. Cavaney for Defendant and Appellant and for Intervener and Appellant.

W. T. Norman and William S. Malin, in pro. per., and H. H. Slate for Respondents.

BARNARD, P. J.—These are appeals from a judgment determining certain rights of the parties arising from and growing out of the location of two mining claims and certain mining operations in connection therewith.

J. P. Madison and L. M. Moon located these claims in Inyo County in October, 1949. In order to get money for development purposes they sold an interest in the claims to James Kral on December 8, 1949. On September 1, 1950, Moon and Kral executed a contract with H. A. Pimlott under which Pimlott agreed to construct a road to the mining property and certain bunkers. As compensation for the building of the road and the bunkers Pimlott was to receive 25 per cent of the net profits from the mine as long as talc was produced in paying quantities. This contract further provided that as a means of determining these net profits a complete set of books should be kept, which should be available to the inspection of Pimlott; and that Pimlott should "supervise" the production of talc and would be entitled to be paid for such supervision, at an amount to be agreed to from time to time, such payment to be charged "as an expense of operation." Pimlott built the road and the bunkers and on December 20, 1950, he assigned that contract to W. T. Norman. On November 28, 1950, Moon and Norman had entered into a contract whereby Norman was to receive 12½ per cent of the net profits derived from the mine as long as it produced talc in paying quantities, and as consideration therefor Norman paid $300 and agreed to assist in securing additional funds with which to operate the mine; to keep the books and records of the mine; to render services as salesman for talc; and to do everything in his

power to make the operation of the mine a success. The production of talc seems to have started about that time under the supervision of Norman, who performed many services in the development and operation of the mine.

Madison and Kral brought this action on October 24, 1951. The first cause of action prayed for declaratory relief as against Moon and a determination that Madison was the sole owner of these claims because of Moon's failure to provide the money with which to build the road and bunkers, and place the mine on production; for an accounting; for an order cancelling all documents made by Moon selling or assigning fractional interests in the mining property or its proceeds; to reform the recorded notices of location so as to show Madison the sole owner and locator of said claims; for an injunction and the appointment of a receiver; and for damages. A second cause of action alleged that Moon on December 8, 1949, acting for the partnership, agreed to assign a 15 per cent interest in "said partnership and the mining property" to Kral for $3,000, which was paid; that Madison, at Moon's request, had given Kral a quitclaim deed to 15 per cent of the property; that Moon had promised to give Kral such a deed but had refused to do so; and prayed that Moon be compelled to execute such a deed. A third cause of action was for judgment quieting title as against all defendants, and that the court declare and determine that Madison is the owner of an 85 per cent interest in these claims and Kral is the owner of a 15 per cent interest therein.

Moon answered the complaint alleging that he and Madison had jointly located these claims; that he had collected $3,000 from Kral and expended the same on these claims in the interest of himself, Madison and Kral; and that he, Madison and Kral owned these claims as tenants in common, he and Madison each owning 42½ per cent and Kral owning a 15 per cent. He also filed a cross-complaint as against Madison and Kral alleging that he had expended certain money in the operation of the mining claims and asking judgment therefor, together with a monthly salary for the time alleged to have been spent in the operation of the mine. The material allegations of this cross-complaint were denied.

Norman filed an answer to the complaint and also filed a cross-complaint to quiet title, for an accounting and judgment for his share of the profits from the mining operation based upon his contract and the Pimlott contract which had been assigned to him.

S. E. Chiapella, by leave of court, intervened in the action and filed an answer denying all the material allegations of the plaintiffs' complaint. He also filed a cross-complaint in ejectment and quiet title as against Madison and Kral, in which he alleged that he and Moon had filed on these same claims on May 20, 1949; that they made a discovery of talc, erected monuments and did other work, and made and filed the required notices of location; that Madison and Moon subsequently wrongfully appropriated and used the discovery monuments and boundary markings which had been previously placed on the property by intervener and Moon; and that the land was not open for location after May 20, 1949. He prayed for a judgment that he and Moon are the owners of the property, and that they are working the same as partners. The material allegations of this cross-complaint were denied by the cross-defendants.

The action was tried before the court without a jury, and the record is voluminous. The trial started on June 24, 1952. On November 28, 1952, the court entered an interlocutory judgment and preliminary findings in which it is stated that all parties had stipulated in open court that an accounting would be necessary, and that the matter should be referred to an accountant to report on all of the financial transactions involved in the proceeding. In addition to certain findings made therein it was ordered that an accounting be had, an auditor was appointed, and all parties were ordered to produce for the accountant all books, papers and information in their possession relating to the various controversies before the court. The auditor later filed a long report in which it was stated, among other things, that some of the claims made by various parties could not be substantiated by receipts or other supporting evidence, and that some of the parties, particularly one, had refused to cooperate or furnish information with respect to certain material things. A hearing on the report of the auditor was held on two days in July, 1954. After a hearing on the report the court made its final findings of fact and conclusions of law, and entered the judgment from which these appeals are taken.

The court found, among other things, that Madison and Moon entered into an oral agreement to locate talc mining claims together, and to carry on mining operations as co-partners; that pursuant to this agreement and in October, 1949, they jointly located these two claims, constructed location and boundary monuments, posted notices of said loca-

tions in the discovery monuments, and jointly recorded notices of location in the office of the county recorder; that both of said claims were then open and unappropriated and a part of the public domain; that they then performed the location and assessment work required by the statutes and jointly recorded notices thereof; that they fully complied with the statutes of this state and of the United States; that thereafter, in order to raise funds for the development of the property, they sold a 15 per cent interest in and to said mining property of said partnership to Kral for $3,000; and that at all times since, title to the mining properties has been vested $42\frac{1}{2}$ per cent interest in Madison, $42\frac{1}{2}$ per cent interest in Moon and 15 per cent interest in Kral.

It was then found that, after the sale to Kral, Madison refused to contribute in any way or take part in the subsequent development and operation of said properties; that Kral and Moon then formed a mining partnership for the purpose of developing and operating the same; that on September 1, 1950, Moon and Kral, acting for the mining partnership, entered into a written contract with Pimlott for the construction of a road and bunkers, for which Pimlott was to receive 25 per cent of the net profits from the operation of the mine so long as talc was produced; that Pimlott fully performed his obligation under said contract; that on December 20, 1950, Pimlott sold and assigned his rights under said contract to Norman,; that the work and acts of Pimlott in fulfilling that contract were performed with the full knowledge at all times of Madison, Moon and Kral; that said works and acts were done for the benefit of the mining partnership, for the benefit of the mining properties, and for the benefit of the owning partnership consisting of Madison, Moon and Kral; and that Madison, Moon and Kral and each of them were aware and had full knowledge of the work and acts of Pimlott, acquiesced in his performance of the same and accepted the benefit of said work and acts, and are estopped to deny the consideration flowing to Pimlott and by him assigned to Norman.

That on November 28, 1950, a contract was entered into between Moon, acting for himself and as agent of the operating mining partnership, with Norman, by the terms of which the mining partnership assigned to Norman $12\frac{1}{2}$ per cent of the net profits from the operation of the mining properties, and Norman agreed to assist Moon in the partnership in securing additional funds for operation, to take full charge of the

books of account, to render services as a salesman, and to do everything in his power to make the operation of the mine a success; that Norman has at all times since fully performed and complied with his obligations under that contract; and that said acts and conduct of Norman in fulfillment of that contract were performed by him with the full knowledge at all times of Madison, Moon and Kral, were done for the benefit of the mining partnership and for the benefit of the mining properties and the owning partnership, and Madison, Moon and Kral acquiesced in his performance of said work and accepted the benefits thereof.

That after November 28, 1950, the mining partnership carried on mining operations for a period of about one year; that 4,000 tons of talc were mined and sold; that during that period various sums were advanced by the parties for the benefit of the mining partnership; that in that connection Moon is indebted to the mining partnership in a certain amount; that the mining partnership is indebted to Kral in a certain amount; that the mining partnership is indebted to Norman in a certain amount; and that the mining partnership is indebted to Madison in a certain amount as his pro rata share of the sum due the owning partnership for depletion of the mining properties during the period of operation.

It was further found that it is not true that Chiapella and Moon discovered and located these claims in May, 1949, or at any other date; that it is not true that they constructed discovery monuments or marked the boundaries or placed notices of location in any discovery monument; that it is not true that they performed work or recorded notice of location for these claims, that they remained in possession or that they worked and developed the same; that it is not true that they caused a roadway to be constructed to permit access to the claims or paid for the same; and that the said Chiapella has no right, title or interest of any nature in and to said claims.

It was further found that pursuant to the stipulation of all parties in open court and in writing the court appointed William S. Malin, a certified public accountant, as referee to make an audit and accounting of the affairs of the mining partnership; that the said referee has made a complete analysis of the financial affairs of the mining partnership and of the records of the various parties affecting the operation of these properties, and has submitted his audit and report; that the said referee has filed a petition for the allowance of fees

on account of his work and expenses; that $9,000 is a reasonable sum to be allowed him for said services; and that this amount in his favor shall be a judgment lien upon said mining properties until paid.

As conclusions of law it was found that Madison is entitled to judgment that he is the owner of 42½ per cent interest in these mining properties, subject to the interests of Norman; that in like manner Moon is entitled to judgment that he is the owner of 42½ per cent interest in the mining properties, and Kral is entitled to judgment that he is the owner of 15 per cent in said properties; that Norman is entitled to receive 37½ per cent of the net profits from the operation of said mining properties as long as talc is produced in paying quantities; that Madison, Kral and Norman, respectively, are entitled to judgment against various individuals for certain amounts heretofore mentioned in the findings; that Chiapella is not entitled to judgment; and that Malin is entitled to judgment against Madison, Kral and Moon for $9,000 for his services as auditor, said judgment to be a lien against both of said mining claims. Judgment was entered accordingly, and a motion for a new trial was denied. Notice of appeal was filed by Moon and Chiapella jointly, and another notice of appeal by Madison.

The main contention of appellants Moon and Chiapella is that the evidence conclusively shows that they located these two mining claims on May 20, 1949; that they built a discovery monument thereon, and recorded the respective notices of locations; that these claims were not open to location when Madison and Moon claim to have located them; that the locations made by Madison and Moon were not made in good faith since Madison and Moon knew that the said land had been previously located and appropriated; that Madison had no authority to convey any interest in said claims to Kral; and that it conclusively appears that the findings of the court, to the effect that Chiapella and Moon did not locate these claims in May, 1949, that they did not post certain notices or do certain work, that they did not remain in possession, that Chiapella has no right, title or interest in said claims, and that the locations made by Madison and Moon in October 1949, are valid, with the proper notices posted and recorded and work done, are not supported by the evidence.

While it is repeatedly stated in the brief of these appellants that the evidence conclusively shows a valid location of these claims by them in May, 1949, the only evidence

pointed out in support of this contention is the two notices of location dated May 20, 1949, and recorded on June 21, 1949. The only description of the land claimed as it appears in each of these notices is that 1,500 feet is claimed along a vein or lode, together with 300 feet on each side of the center of the lode or vein; that the general course of the vein or lode is northerly and southerly; and that "said claim is situate in the Ibex Mining District, Inyo County, State of California, in an undetermined section of said area, and is approximately four miles westerly from U.S. Highway No. 127." No proper description of the land claimed was given and no evidence is pointed out showing that the other requirements of a valid mining location were met. The record discloses that the evidence was conflicting with respect to practically every material point in the case. In addition to the other evidence supporting the respondents' contentions a witness who owns other claims in this general district testified that he went on these claims in July and September, 1949; that he went there again on October 1, 1949, with Madison and Moon; that in July he saw no evidence of any work having been done on the property; that in September and October he saw no evidence of any location or discovery work on these claims; and that after October 1 he and another man helped Madison dig an open cut about 15 or 16 feet into the mountain and about 12 feet high. There was other evidence amply sufficient to support the court's finding with respect to the validity of the Madison-Moon locations in October, 1949. The question as to the prior location by Chiapella and Moon in May, 1949, was one of fact for the trial court, and the evidence fully supports the court's finding to the effect that no valid location was then made.

The main contention of the appellant Madison is that the alleged interests of Norman, based upon his contract for 12½ per cent of the net profits from the mines and the Pimlott contract for 25 per cent of the net profits which was assigned to him, are void under the Corporate Securities Act, and that those parts of the judgment which are in favor of Norman and based upon those contracts should be reversed. It is argued that these contracts are securities within the meaning of section 25008 of the Corporate Securities Act in the Corporations Code; that section 25500 of that act forbids the issuance of a security without a permit from the Corporation Commissioner; that no such permit was here issued; and that under section 26100 both contracts are void. In this connection the appellants Moon and Chiapella also contend that the

Pimlott contract, which was assigned to Norman, was void because it was a contract for personal service which could not be assigned.

The Pimlott contract was mainly a contract for the building of a road to be paid for out of a certain fund, and the portion for "supervision" was apparently intended, along with the provision for examination of the books, as a means of protecting the proper collection of the amount due for services already performed. The latter part of that contract, to some extent at least, gave Pimlott an interest in a general partnership and also called for his personal services. ▇ If it was an interest in a general partnership, the partnership which was formed for the operation of the mine, the prohibition of the Corporate Securities Act did not apply as section 25100 subd. (1) of that code provides that any partnership interest in a general partnership, except one offered to the public, is exempted from the application of the act. If that contract be considered as one calling for personal services a permit was not required. In *People* v. *Davenport,* 13 Cal.2d 681 [91 P.2d 892], it was pointed out that the purpose of the blue sky laws is to protect investments and securities whereby a profit is promised and expected without active efforts on the part of the investor, and that these laws are not intended to apply to contracts containing mutual obligations. In *Austin* v. *Hallmark Oil Co.,* 21 Cal.2d 718 [134 P.2d 777], the court said: "Where, however, as in the present case, the assignee is to share in the conduct of the enterprise, the instrument representing an assignment of a fractional interest in the production of oil is not a security within the act." ▇ Moreover, if this was a security it was issued by Moon on behalf of the operators and owners of the mine and for their benefit, they knowingly received the benefits thereof, and the appellants should be considered as being in the position of an issuer, and should not be allowed to take advantage of their own failure to obtain a permit. (*Garnette* v. *Mankel,* 71 Cal.App. 2d 783 [163 P.2d 466]; *Mindenberg* v. *Carmel Film Productions,* 132 Cal.App.2d 598 [282 P.2d 1024].) In this equitable action, in view of all the circumstances, including the way these parties were working and agreeing among themselves, and where nothing was being offered to the general public, the court was justified in holding that these contracts were not void for this reason. In view of the evidence it cannot be held that the Pimlott contract was void in that since it called for personal services it could not be assigned. The construction

of the road and bunkers was not such a matter as could not be assigned and, if the portion of the contract providing for supervision be considered one for personal services, there is strong evidence that the assignment of that contract was consented to and acted on, and the benefits accepted by all of the parties hereto, except the intervener who had no rights in the entire matter as found by the court. ■ A contract for personal services may be assigned with the consent and approval of the other party (*Tantum* v. *Keller*, 95 N.J.Eq. 466 [123 A. 299]), and many cases in this state have recognized this rule in holding that such a contract may not be assigned in the absence of the consent of the other party.

■ The appellants Moon and Chiapella also contend that the 15 per cent interest conveyed to Kral was void as in violation of section 25008 and 26100 of the Corporations Code. This was a conveyance of a specific interest in particular land, and not a security within the meaning of the Securities Act. Moreover, if it be deemed to be such a security, Kral was acting as a member of the partnership and took a large part in carrying on its business and operating the mine. There was strong evidence of the active participation of both Norman and Kral in developing the mine and carrying on production therein.

The appellants Moon and Chiapella set forth a large number of objections to the audit and report of the referee and auditor, and ask that the report of the referee be set aside and annulled. These objections were filed in the trial court, were heard and passed upon in a two-day hearing, and no argument other than the statement of the objections is here made. The matter was one of fact for the trial court and nothing appears in the record which would justify an interference with the court's rulings thereon. In this connection, the appellant Madison filed objections to the audit and referee's report in the trial court on the ground that he had nothing to do with that matter, and that the charge of the referee and auditor should not be made a lien against these mining claims. On this appeal he argues that the amount allowed to the auditor and referee should be charged to the other parties to the anction and not to him, and should not have been made a lien against the mining properties.

■ In his complaint Madison alleged an oral agreement between Moon and himself for the purpose of locating and filing on certain talc mining claims, repeatedly referred to that as a partnership agreement, and alleged that Moon had

violated certain parts of "said partnership agreement" and that he had acted in behalf of that partnership in agreeing to convey a 15 per cent interest in the claims to Kral. He also alleged that his interest in the property had been damaged through improper mining operations, and asked that the defendants be enjoined from asserting any claims with respect to the property. Madison and Kral asked for an accounting in their complaint, and Moon asked for an accounting in his cross-complaint. Thereafter, a stipulation was filed by all parties to the action (except Chiapella) that Malin, a certified public accountant, should be appointed as referee for the purpose of making an accounting and audit. On the same day, the court entered a written order to that effect, directing all the parties to the action to furnish all necessary books, papers, accounts and records, and other information in connection with this controversy, and further providing that the amount of compensation of the said referee be determined and fixed by the court after completion of the audit and the submission of the referee's report to the court. Section 638 of the Code of Civil Procedure provides that a reference for certain purposes may be ordered on the agreement of the parties, and section 1023 provides that the fees of the referees are such reasonable sum as the court may fix for the time spent in the business of the reference. This audit and reference involved all phases of the various controversies being tried in this action, and under the stipulation and the facts it cannot be held that the compensation was not properly charged to Madison, Moon and Kral, or that it could not properly be made a lien against the interests of these parties in the physical property involved.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.