[S. F. No. 17777. In Bank. Oct. 20, 1950.]

CITY AND COUNTY OF SAN FRANCISCO, Appellant, v. COUNTY OF SAN MATEO, Respondent.

Dion R. Holm, City Attorney, and A. Dal Thomson, Public Utilities Counsel, for Appellant.

Gilbert D. Ferrell, District Attorney (San Mateo), Louis B. Dematteis and John A. Bruning, Assistant District Attorneys, Keith Sorensen, Civil Deputy District Attorney, and A. S. Whitmore, Associate Counsel, for Respondent.

Fred N. Howser, Attorney General, James E. Sabine, Deputy Attorney General, Harold W. Kennedy, County Counsel (Los Angeles), John D. Maharg, Deputy County Counsel, Dixwell L. Pierce, and F. S. Wahrhaftig, Amici Curiae on behalf of Respondent.

SHENK, J.—The plaintiff brought this action against the county of San Mateo to recover an alleged illegal proportion of the 1946-1947 taxes levied against the city's airport in San Mateo County claimed as exempt under article XIII, section 1, of the state Constitution. The county's demurrer to the complaint was sustained without leave to amend. Judgment for the defendant followed. The city has appealed.

The complaint alleges in substance that beginning in 1930 the city acquired large tracts of marsh, tide and submerged lands in San Mateo County for the purpose of utilizing the site as an airport; that the city expended $6,753,529 in raising the level of the land by dredging and filling operations, and making provision for drainage and drainage control; that these operations were completed before the first Monday of March, 1946; that prior thereto the county had assessed the land on the basis of its condition when acquired and at the sum of $100,785; that in 1946 the land was assessed at $684,625 on the basis of its value prepared for use as an airport; and that the city paid the full tax under protest claiming an exemption as to the portion representing the increase in the assessment. The complaint alleges illegality

as to that portion because, it is claimed, the fill constitutes an "improvement" and is therefore exempt under the constitutional provision. No proceeding was taken before the State Board of Equalization. The appeal presents two questions: (1) whether the raising of the level of the land by the filling operations was an improvement within the meaning of the Constitution, and (2) whether the city should first have pursued the administrative remedy.

The first question presents a problem of public importance in the field of taxation under the constitutional amendment of 1914, and a decision thereon will serve as a guide generally to the taxing authorities of the state. Prior to 1914 section 1 of article XIII of the Constitution provided that property belonging to "the United States, this state, or to any county or municipal corporation within this state shall be exempt from taxation." In November 1914 the following was added to the exemption clause: ". . . except such lands and the improvements thereon located outside of the county, city and county, or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same . . . *provided,* that *no improvements of any character whatever* constructed by any county, city and county or municipal corporation shall be subject to taxation. All lands or improvements thereon, belonging to any county, city and county, or municipal corporation, not exempt from taxation, shall be assessed by the assessor of the county, city and county or municipal corporation in which said lands or improvements are located, and said assessment shall be subject to review, equalization and adjustment by the State Board of Equalization." (Emphasis added.)

The question of the taxability of the portion of the land designated as the fill is resolved by the language of the 1914 amendment. Thereunder the county has power to assess only those municipally owned lands or improvements that are not exempt from taxation. If the fill constitutes an improvement as contemplated by the constitutional amendment, it is to that extent exempt, and the county had no power to take it into consideration in making the assessment. In arguing the taxability of all portions of the land including the fill, the county refers to section 105(a) of the Revenue and Taxation Code. That section states that the term "Improvements" includes "All buildings, structures, fixtures, and fences erected on or affixed to the land, except telephone and telegraph lines." The county seeks to rest on the proposition that since land

is land an addition thereto in the nature of a fill cannot be deemed to be an improvement in any sense. Reliance is placed on *San Pedro etc. R. R. Co.* v. *Los Angeles*, 180 Cal. 18 [179 P. 393]. That case involved the taxability of a private leasehold of tidelands. Filled land between the shore line and the breakwater was on tideland. It was nontaxable as against the United States; and this court said it would be absurd to consider it as an improvement under a lease providing for the removal of improvements at the expiration of the lease. The court was there concerned with the meaning of the term "improvements" under the code definition dealing with the taxation of private property interests. Such declarations are not controlling in the present case where the taxability of the city-owned property is dependent upon a special provision in the Constitution. The sense in which words are used in that provision creating an exception to the general exemption from taxation of municipally-owned property depends on the objective sought to be achieved. (*Rock Creek etc. Dist.* v. *County of Calaveras*, 29 Cal.2d 7, 9 [172 P.2d 863].)

The history and purpose of the amendment have heretofore been considered by this court. (*Pasadena* v. *County of Los Angeles*, 182 Cal. 171 [187 P. 418]; *Turlock Irr. Dist.* v. *White*, 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72]; *San Francisco* v. *County of Alameda*, 5 Cal.2d 243 [54 P.2d 462]; *San Francisco* v. *San Mateo County*, 17 Cal.2d 814 [112 P. 2d 595]; *Rock Creek etc. Dist.* v. *County of Calaveras, supra*, 29 Cal.2d 7.) Prior to the amendment property acquired by outside municipalities had no place on the tax rolls of the county in which it was situated. It was readily appreciated that a continuation of the policy of complete exemption might impoverish counties extensively invaded by outside municipalities seeking acquisition of property for public use. A partial retention of the taxing power of the county as to such acquired property was therefore devised. The county was empowered to assess "such lands and the improvements thereon" . . . "as were subject to taxation at the time of the acquisition" of the same by the city. Retained within the exemption provision were "improvements of any character whatever constructed" by the city. "Construction" or "constructed" means the creation of something that did not exist before as distinguished from replacement or repair. (*San Francisco* v. *San Mateo County, supra*, 17 Cal.2d at 819, cit-

ing cases.) The obvious purpose was to permit the assessment of the property which was in existence at the time it was acquired by the city. The assessment in successive years of that much of the municipally-owned property was made subject to review, equalization and adjustment. The phrase "improvements of any character whatever" must be held to include any addition (i. e., excluding matters of repair and replacement) to the property as it was when acquired. The amendment does not define "improvements" beyond the descriptive language "improvements of any character whatever." It is difficult to perceive what more inclusive language could have been employed to express the intent to preserve to the county a continuation of the property on the tax rolls as a source of revenue restricted, however, in each successive year to an equalized valuation of the property before the addition of any construction. The manifest intention in adopting the amendment was that if any such addition or improvement was not there at the time of acquisition, it was not taxable thereafter. To restrict the meaning of "improvements" to that defined elsewhere than in the Constitution would be to defeat that purpose. If the invoked restricted meaning was intended the broader language of inclusion need not have been employed. The taxing power may not be extended to cover property under the exception to the exemption clause beyond that expressly included. (*Pasadena* v. *County of Los Angeles, supra,* 182 Cal. at 174.) It is clear that the fill was a constructed addition to land and not merely repair or replacement. A contrary holding would permit a county to tax an outside municipality for substantial construction confined to raising the land level by fill and other means at a cost of millions of dollars, a result which, if language means anything, was intended to be avoided by the 1914 amendment.

It therefore appears from the facts alleged in the complaint that the fill which raised the level of the land for use as an airport was not "such lands" and "improvements" as were "subject to taxation at the time of the acquisition," but was an improvement "constructed" by the city and therefore exempt from taxation under the constitutional amendment.

The fact that the first question is decided in accordance with the plaintiff's contentions does not, however, justify a reversal of the judgment in this particular case, for the reason that the second question must be resolved in favor of the defendant.

■ Section 1 of article XIII of the Constitution provides that the assessment of city-owned lands "shall be subject to review, equalization and adjustment by the State Board of Equalization." An administrative remedy is thus provided. One ground of the demurrer is that the complaint is insufficient because it fails to allege that the administrative remedy has been pursued. In the recent case of *Security-First National Bank* v. *County of Los Angeles* (May 1950), 35 Cal. 2d 319, 320 [217 P.2d 946], this court stated: "It is the general rule that a taxpayer seeking judicial relief from an erroneous assessment must have exhausted his remedies before the administrative body empowered initially to correct the error . . . An exception is made when the attempted assessment is a nullity because the property is either tax exempt or outside the jurisdiction . . . But resort to the board of equalization is not rendered unnecessary by the fact that, as in the present case, the error is one in the classification of property" and the tax is assailed on the ground that it is in violation of constitutional mandates. The omissions in the above quotation are the citations of numerous authorities in support of each statement made. The State Board of Equalization has the power "initially" to make a correction of the error alleged in this case, and the facts do not bring it within any exception noted in the authorities cited. It is not claimed that the assessment is a nullity in toto. An adjustment is sought by virtue of an erroneous inclusion of exempt improvements with taxable lands. If the city was dissatisfied with the assessment as an accumulated increase in the value of the taxable property, it was necessary to apply to the state board for review and adjustment prior to pursuing the remedy for refund of taxes paid under protest. (*Luce* v. *City of San Diego*, 198 Cal. 405 [245 P. 196] ; *Los Angeles etc. Corp.* v. *Los Angeles*, 22 Cal.App.2d 418 [71 P.2d 282].) We therefore have a problem of "equalization and adjustment" confided by the Constitution to the State Board of Equalization. It is the province of the board to "adjust" the assessment so that the exempt and the nonexempt portions of the property be properly segregated.

The judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.