[Civ. No. 13800. Third Dist. May 29, 1973.]

COUNTY OF SACRAMENTO et al., Plaintiffs and Appellants, v.
ASSESSMENT APPEALS BOARD NUMBER 2 OF SACRAMENTO
COUNTY et al., Defendants and Respondents;
RCA CORPORATION, Real Party in Interest and Respondent.

[Civ. No. 13523. Third Dist. May 29, 1973.]

COUNTY OF SACRAMENTO et al., Plaintiffs and Respondents, v.
ASSESSMENT APPEALS BOARD NUMBER 2 OF SACRAMENTO
COUNTY et al., Defendants and Respondents;
RCA CORPORATION, Real Party in Interest and Appellant.

[Civ. No. 13732. Third Dist. May 29, 1973.]

RCA CORPORATION, Plaintiff and Appellant, v.
ASSESSMENT APPEALS BOARD NUMBER 2 OF SACRAMENTO
COUNTY et al., Defendants and Respondents.

## COUNSEL

John B. Heinrich, County Counsel, and Monte L. Fuller, Deputy County Counsel, for Plaintiffs and Appellants in No. 13800 and for Plaintiffs and Respondents in No. 13523.

Downey, Brand, Seymour & Rohwer and Robert R. Harlan for Real Party in Interest and Respondent in No. 13800 and Real Party in Interest and Appellant in No. 13523 and for Plaintiff and Appellant in No. 13732.

No appearance for Defendants and Respondents.

Joseph E. Burke as Amicus Curiae on behalf of Defendants and Respondents in No. 13523.

## OPINION

**DAVID, J.***—These three consolidated appeals have surfaced out of a procedural morass, involving the assessment and taxation of data process-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

ing equipment and systems furnished by contract to the State of California, by RCA Corporation. The State of California, being exempt from taxation (Cal. Const., art. XIII, § 1),[1] the county assessor turned his guns on RCA, asserting that it was liable for personal property taxes upon the systems. (Rev. & Tax. Code, § 405.) After a year's conferences with the company, including inspection of the company's records, locally and in New York, the assessor made an assessment for "escaped property," upon which taxes were levied against RCA in the sum of $546,326.87, and were paid under protest.

Thereafter, application was made by RCA before Assessments Appeals Board No. 2 ("board") for reduction of assessments, asserting that although RCA was legal owner, the transactions with the state were actually conditional sales, though denominated "leases," and hence, under accepted principles, the owner had a taxable interest of zero. Factors of valuation and methods of valuation were the subject of testimony and of discussions at the hearing. At the conclusion of the proceeding, the board filed its opinion on May 8, 1970, determining that the contentions of RCA were correct, that its interest had a zero valuation. Thus, the taxes paid for the tax years 1967-1968, 1968-1969 and 1969-1970 were refunded to RCA. The county counsel advised RCA that no appeal of this ruling would be taken.

Commencing 11 months later, the county in a variety of proceedings, has sought to relitigate the issues, and recover the refund and to block any consideration of like protests of assessments made for the tax years 1970-1971 and 1971-1972 by the assessment appeals board. Since the county anticipated that upon any such hearing the ruling made in reference to the first three years might be repeated, its legal contentions are consonant with its fears.[2] Thus, when the assessor repeated the assessment of RCA Corporation for the tax year 1970-1971, RCA again sought equalization, resulting in the action of the county successfully seeking a writ of prohibition. This was appealed by RCA and is before us as 3 Civil No. 13523.

---

[1]The Constitution exempts property "belonging to" the state. Irrespective of the point at issue (i.e., whether there has been a conditional sale to the state) for the purposes of this decision, we consider its usufructuary interest in the data processing equipment concerned to be "property" which does "belong" to the state. (Cf. Rev. & Tax. Code, § 107, subd. (a); *Mattson* v. *County of Contra Costa* (1968) 258 Cal. App.2d 205, 212 [65 Cal.Rptr. 646].)

[2]But if the administrative determination in the first equalization proceeding was erroneous, the county is not estopped thereby. (*Outer Harbor Co.* v. *Los Angeles* (1920) 49 Cal.App. 120, 132-133 [193 P.2d 137]; cf. *La Societe Francaise* v. *Cal. Emp. Com.* (1943) 56 Cal.App.2d 534, 553 [133 P.2d 47].)

Again assessed for the tax year 1971-1972, RCA Corporation made application for reduction of the assessment, which the board refused to hear on advice of the county counsel that it had no jurisdiction. RCA sought a writ of mandate to compel the board to proceed. The general demurrer of the county to the petition was sustained and the proceeding dismissed, which is the basis of RCA Corporation's appeal before us (3 Civil No. 13732).

Our discussion will reveal other legal skirmishes.

It will be helpful to consider the appeals chronologically in reference to the tax years for which assessments were made.

## I.

Appeal 3 Civil No. 13800 arises from a judgment of the superior court, dismissing the county's petition for a writ of mandate to compel Assessment Appeals Board No. 2: (1) to set aside its decision of May 8, 1970; (2) to determine that RCA is the fully assessable owner of the data processing equipment; and (3) for general relief. (Sacramento County Superior Court No. 224045.)

In the petition for mandamus, there were annexed and pleaded by reference the transcript of proceedings before Assessment Appeals Board No. 2, its order of May 8, 1970, and an exemplar of the four contracts between RCA and the State of California (stipulated to be typical). The answer admitted that the complaint properly set forth the proceedings. They therefore are before us: (a) we take judicial notice thereof; (b) a demurrer confesses the facts well pleaded, which also places the documentation before us.[3]

In the petition for mandate in 3 Civil No. 13800, the county and the board of supervisors assert that:

(1) The relief sought by the taxpayer before the assessment appeals board was the declaration of an "exemption" and that the assessment appeals board has no jurisdiction to consider or grant an "exemption."

---

[3]Inconsistently, the county on the one hand asserts that all its legal maneuvering has been to secure judicial review of the cognate court proceedings and the proceedings of the assessment appeals board, but contends that judicial notice may not be taken of them pursuant to the properly noticed requests made upon this appeal. The county is mistaken. (*Taliaferro* v. *Davis* (1963) 216 Cal.App.2d 398 [31 Cal.Rptr. 164]; *Alvis* v. *Bank of America* (1949) 95 Cal.App.2d 118 [212 P.2d 608, 36 A.L.R. 2d 1209]; *Myers* v. *Washington* (1963) 211 Cal.App.2d 767 [27 Cal.Rptr. 778]; Evid. Code, §§ 459, 451, 452, 453, and particularly §§ 452, subds. (b) and (d), 200, defining "public entity." Cf. *Jordan* v. *County of Los Angeles* (1968) 267 Cal.App. 2d 794, 798 [73 Cal.Rptr. 516].)

(2) That as a matter of law, the assessment appeals board erroneously decided that the contracts with the state were conditional sales contracts, and that RCA Corporation was only security owner, and had no taxable interest; that in law and fact, said agreements were for lease and hire of the data processing equipment, the lessor RCA being properly assessed for their value, no purchase option having been exercised.

(3) That the petitioners did not have a plain, speedy and adequate remedy in the ordinary course of law.

Since the legal advisor of Assessment Appeals Board No. 2, the county counsel, was seeking the writ of mandate against the board, it had no independent representation in this proceeding.

■ The legal determinations of the assessor and the assessment appeals board are subject to judicial review. (*Flying Tiger Line, Inc.* v. *County of L. A.* (1958) 51 Cal.2d 314, 320 [333 P.2d 323]; *A. F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67]; *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 724 [96 Cal.Rptr. 379]; *County of Amador* v. *State Board of Equalization* (1966) 240 Cal.App.2d 205, 216 [49 Cal.Rptr. 448].)

■ The board's determination of facts cannot be set aside unless fraudulent, arbitrary, an abuse of discretion or unless the board failed to follow the standard prescribed by the Legislature. (*McClelland* v. *Board of Supervisors* (1947) 30 Cal.2d 124, 129 [180 P.2d 676]; *Eastern-Columbia, Inc.* v. *County of L. A.* (1945) 70 Cal.App.2d 497, 503 [161 P.2d 407]; *Bank of America* v. *Mundo* (1951) 37 Cal.2d 1, 5 [229 P.2d 345]; *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 564 [290 P.2d 544].)

A. *This proceeding is not barred by the statute of limitations.*

By definition of their scope, Government Code section 11523, and Rules on Appeal, rules 1 and 2, are not applicable. Since the taxpayer must file suit for refund within six months after paying under protest, it is contemplated that all proceedings for equalization shall have been concluded, since otherwise the bases of his claim would not have been determined. ■ As developed, *infra,* the refund suit is an adequate remedy at law for both the taxpayer and the county to review the equalization board proceedings. In the unusual circumstances here, where the county made the tax refund and now seeks to challenge the assessment appeals board proceedings, there is some basis for holding that a four-year statute applies. (*Allen* v. *Humboldt County Board of Supervisors* (1963) 220 Cal.App.2d

877, 884-885 [34 Cal.Rptr. 232].) Since this mandate proceeding is in essence a tax collection suit, it is arguable that the three-year statute applies. (Code Civ. Proc., § 338, subd. 1; 2 Witkin, Cal. Procedure (2d ed. 1970) § 344, pp. 1184-1185.) In either event, the county's suit is not barred.

■ Although once officially declaring the determination of the assessment appeals board in ordering the cancellation of the 1967-1969 assessments would not be appealed, and thereafter making the refund sought by the taxpayer, the county is not estopped to proceed. (*Outer Harbor Co.* v. *Los Angeles* (1920) *supra,* 49 Cal.App. 120, 132-133.)

B. *Res judicata does not bar the county in 3 Civil 13800.*

As indicated, *infra,* RCA Corporation filed action No. 209559 in the Superior Court of Sacramento County to recover the taxes paid under protest for 1970-1971. The county cross-complained, seeking to litigate the validity of the assessment appeals board action and to recover the amount refunded for the 1967-1969 levies. The demurrer of RCA Corporation was sustained without leave to amend, but no judgment was entered on the cross-complaint. This court and the Supreme Court denied writs of mandate, sought to compel such an entry. There is only one judgment in such an action, and the principal action remains to be tried. The trial court correctly withheld judgment. (*De La Beckwith* v. *Superior Court* (1905) 146 Cal. 496, 500 [80 P. 717]; *Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116 [199 P.2d 668].) Hence, such ruling upon demurrer is not res judicata; the trial court still retains the power to reconsider the ruling on demurrer, if it is deemed proper to do so, in the light of the subsequent litigation of the parties.

C. *The assessment appeals board has jurisdiction.*

The county's claim that the board had no jurisdiction to consider RCA's application grasps at a wisp of wishful thinking.

The constitutional jurisdiction of an assessment appeals board is stated: ". . . Each board shall have the power to equalize the valuation of the taxable property in the county for the purpose of taxation in the manner provided for in Section 9 of this article. All general laws pertaining to county boards of equalization shall be applicable to county assessment appeals boards." (Cal. Const., art. XIII, § 9.5.) [4]

---

[4] The assessment appeals board is not, as alleged in the county's petition for mandate, "acting in behalf of the Board of Supervisors" nor is the board of supervisors charged with the "equalization of *ad valorem* property taxes for the County of Sacramento." Once called into being as provided in California Constitution, article XIII,

(1) ██ Any quasi-judicial body, such as the assessment appeals board, has the right to pass upon its own jurisdiction in the first instance. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194-195 [120 P.2d 26].) It is not to be denied by directions given by the county counsel to its clerk not to calendar a request for equalization, or a ukase that it has no jurisdiction to proceed.

██ "Equalization" means adjusting the value of property assessed to conform to its real value. (*Abrams* v. *San Francisco* (1941) 48 Cal.App.2d 1, 6 [119 P.2d 197]; *Eastern-Columbia, Inc.* v. *County of L. A.* (1943) 61 Cal.App.2d 734, 743 [143 P.2d 992].)

██ Alleged overvaluation of existing property must be presented before the board of equalization, as a condition precedent to recovery of taxes paid under protest. (*Montgomery Ward* v. *Welch* (1936) 17 Cal.App.2d 127, 133 [61 P.2d 790].)

(2) ██ "Tax exemption" is not a personal grant by the assessor, but a legal right conferred by constitution and statute. (*Goodwill Industries* v. *County of L. A.* (1953) 117 Cal.App.2d 19, 26 [254 P.2d 877].)

██ Under the California Constitution, the only *exemptions from taxation* are those stated therein, or those which the Legislature is given constitutional authority to grant by article XIII, section 14, to "any or all forms, types or classes of personal property."

(3) When, as here, a property owner claims that it has no taxable interest under the conditional sales rule, no granting or denial of an "exemption" is sought, so as to deprive the board of jurisdiction.

D. *Title held by an owner for security upon a conditional sale has no taxable value.*

██ An accepted principle of valuation is that the interest of an owner holding title to chattels only as security in a conditional sale has no taxable value, i.e., it has no actual cash value on the market. (*County of San Diego* v. *Davis* (1934) 1 Cal.2d 145 [33 P.2d 827]; *Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 663 [192 P.2d 17]; cf. *Bowden* v. *Bank of America* (1950) 36 Cal.2d 406, 413 [224 P.2d 713]; *RCA Photophone* v. *Huffman* (1935) 5 Cal.App.2d 401, 405 [42 P.2d 1059]; *Johnson* v. *County of Los Angeles* (1939) 31 Cal.App.2d 579, 583 [88 P.2d 725]; cf. the same doctrine

section 9.5, the assessment appeals board is a constitutional body, charged with such functions under Constitution, article XIII, section 9, in lieu of the board of supervisors, formerly the agency for equalization.

applied to realty: *Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 641 [192 P.2d 5]; *Automatic Voting Mach. Corp.* v. *Maricopa County* (1937) 50 Ariz. 211 [70 P.2d 447, 116 A.L.R. 320]; 110 A.L.R. 1499.)

The RCA Corporation sought to apply this rule in support of reduction of its assessments. This is a matter of valuation and not a claim of "exemption." This principle has been asserted in a number of decisions.

"This lease is owned by appellant, it is property, and it falls within a taxable class. The assessor erroneously, under the pleading, assessed it at $500,540 when he should have assessed it at zero. In our judgment, this constituted an overassessment of existing property and not an assessment of nonexistent property.

". . . . . . . . . . . . . . . . . . . .

". . . It remains a case of overvaluation and under the settled rule cannot be recovered in the absence of recourse to the board of equalization." (*Los Angeles etc. Corp.* v. *Los Angeles* (1937) 22 Cal.App.2d 418, 424 [71 P.2d 282], quoted and approved, *Security-First Nat. Bk.* v. *County of L. A.* (1950) 35 Cal.2d 319, 321-322 [217 P.2d 946], requoted via that case in *City & Co. of S. F.* v. *County of San Mateo* (1950) 36 Cal.2d 196, 201 [222 P.2d 860], saying that the board must adjust the assessment so that exempt and nonexempt portions may be segregated; quoted and approved, *Parr-Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157, 171 [272 P.2d 16], Carter, J., dissenting.)

Thus, the fact that the taxpayer asserts that the proper valuation is zero does not deprive the board of jurisdiction on the false premise that it is asked to declare an "exemption." "The necessity of recourse to the board is properly determined by the nature of the issues in dispute, and not by whether an assessment is attacked in part or *in toto*." (*Star-Kist Foods, Inc.* v. *Quinn* (1960) 54 Cal.2d 507, 510 [6 Cal.Rptr. 545, 354 P.2d 1].)

E. *The board may consider and act on matters of law.*

It is inevitable that equalization may involve legal principles defining property interests and applicable valuation principles. The existence of legal issues affects the nature and extent of review by the courts, not the jurisdiction of an equalization board. While it is held that in certain cases the taxpayer's suit for refund may be maintained without first applying to the board of equalization for relief, it is not true that he may not raise the issues before the board. (Cf. e.g., *Hammond L. Co.* v. *County of Los Angeles* (1930) 104 Cal.App. 235, 241-242 [285 P. 896].)

The taxpayer, in order not to find himself in a procrustean dilemma, has

the right to present his application for reduction to the board. The doctrine of exhaustion of administrative remedy has had increasing application in tax cases. Even where constitutional questions are involved, application to the administrative body in the first instance has been held prerequisite to suit. (Cf. *Robins* v. *County of Los Angeles* (1967) 248 Cal.App.2d 1, 13 [56 Cal.Rptr. 853].) In *Security-First Nat. Bk.* v. *County of L. A., supra,* 35 Cal.2d 320-321, the issue was whether as a matter of law and fact, bank counters and vault doors were real or personal property for the purposes of taxation. This involved the law relative to fixtures, trade fixtures, and taxation, as previously developed in *Trabue Pittman Corp.* v. *County of L. A.* (1946) 29 Cal.2d 385 [175 P.2d 512]. Failure to apply to the board of equalization for relief was held to preclude recovery of taxes paid under protest.

Whether or not there was a bailment was the question before the board in *S. & G. Gump Co.* v. *San Francisco* (1941) 18 Cal.2d 129 [114 P.2d 346, 135 A.L.R. 595], as well as the issue of ownership.

In an early and instructive case, *Kern Valley etc. Co.* v. *County of Kern* (1902) 137 Cal. 511, 514 [70 P. 476], the question was whether certain weirs in a canal, assessed to plaintiff, in fact belonged to Miller & Lux. The court considered the agreement between the parties. The Supreme Court said, "it was the duty of the county board of equalization to correct the roll when its attention was properly called to the fact, as it is alleged was done."

Where an assessment erroneously includes improvements exempt from taxation, with assessable property, the board of equalization initially has the power to correct the error. This is embraced in the powers of equalization and adjustment confided to the equalization board. (*City & Co. of S. F.* v. *County of San Mateo, supra,* 36 Cal.2d 201.)

In these associated cases, it is not logical to expect that the taxpayer would hazard claimed tax refunds aggregating $1,239,668.05 and interest, upon the assumption that it need not exhaust the administrative remedy before the assessment appeals board. If it had not, there seems every likelihood that the county might urge that the refund actions were barred.

F. *The lessor may be fully assessed on a lease of personal property to an exempt governmental agency.*

No provision has been made in California law for assessment and valuation of the separate interests of lessor and lessee, in a lease of personal property. (*General Dynamics Corp.* v. *County of L. A.* (1958) 51 Cal.2d 59 [330 P.2d 794], followed in *Burhans* v. *County of Kern* (1959) 170 Cal.App.2d 218, 224-225 [338 P.2d 546].)

Only three cases have dealt with the lessor-lessee situation in regard to real property where (as here) the lessee is an exempt governmental agency. In *Ohrbach's, Inc.* v. *County of Los Angeles* (1961) 190 Cal.App.2d 575, 581 [12 Cal.Rptr. 132], the holder of property on a 99-year lease subleased a portion of the premises to the state, whose possessory interest was exempt from taxation. The taxpayer contended that the value of the possessory interest should have been computed and deducted from the assessment against him for the whole.

It was held that the rental received from the sublease represented the use value of the sublease, and that such value plus the value of the reversion constituted the entire value of the property. The lessor was properly assessed, therefore, for the entire value. (Accord, *Rothman* v. *County of Los Angeles* (1961) 193 Cal.App.2d 522 [14 Cal.Rptr. 427].)

The interest of a lessor of real property to a school district, exempt from taxation, has been held to be without taxable value. (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258 [148 P.2d 649], Traynor, J., dissenting.) This was based upon the constitutional language, that property "used" by a school district was exempt from taxation although otherwise only property "belonging" to the state was exempted (*id.* at pp. 262-263), and that taxation of the lessor would increase the burdens upon the school district. (*Id.* at p. 263.) The *Ohrbach's* case, therefore, is most nearly parallel to the instant situation.

Because it would be an intolerable burden otherwise to consider each contract, fixing the relationships of lessor-lessee (*Trabue Pittman Corp.* v. *County of L. A., supra,* 29 Cal.2d 397; *RCA Photophone* v. *Huffman, supra,* 5 Cal.App.2d 405), the assessor may assess one in possession or control of property or the owner. (Rev. & Tax. Code, § 405.) Since the exempt State of California is in possession, the assessor perforce considered the contracts between the parties. The question resolves itself into whether or not they constituted conditional sales to the state, wherein RCA Corporation retained only security ownership with no taxable value; or whether they were what they purported to be, leases of data processing equipment and systems with the right but not the obligation to exercise the stated options to purchase all or any part of the leased equipment.

Nothing in the circumstances under which the agreements were made is tendered to change or alter the plain and unambiguous provisions of the instruments. (Code Civ. Proc., § 1860; Civ. Code, § 1638.)

The assessment appeals board had testimony before it that RCA, for bookkeeping purposes, depreciation accounts and income tax returns,

treated these contracts for leasing and hire as conditional sales contracts. But no ambiguity of the language of the instruments was asserted; and, of course, the State of California, the other party to the contracts, was not before the board.

This was incompetent evidence. No mistake or imperfection of the writing is put in issue; no question of the validity of the instruments is in dispute; there is no ambiguity, no claim of illegality or fraud. (Code Civ. Proc., § 1856.)

There is no dispute concerning the terms of the agreements. Extrinsic evidence is not permitted to add to, detract from, or vary the terms of these fully integrated agreements. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521 [67 Cal.Rptr. 761, 439 P.2d 889].)

We therefore are permitted and required to make our own independent determination of the legal effect of these instruments. (Code Civ. Proc., § 1858; *Flying Tiger Line, Inc.* v. *County of L. A., supra,* 51 Cal.2d 320; *A. F. Gilmore Co.* v. *County of Los Angeles, supra,* 186 Cal.App.2d 476; *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 724; and generally, *U. S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]; *Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673].)

RCA Corporation freely admits that the language of the instruments is not of conditional sale but of leasing and hiring. The state has an option to purchase the equipment, or any item of it, for specified list prices, wherein rentals paid are credited to the purchase price.

In this instance, the assessor's valuation of the property for 1970-1971 based on the contract value is $12,149,582.

The criteria for determination seem to be whether or not at the time of entering into the contract there was a fixed intention to buy and sell, whether at that moment the entire obligation to pay arose, payments being on a deferred basis; and where the "purchase" was made subject to a scale of options, whether the investment was such that the lessee was under such an economic compulsion to take up the option that it could be construed to be a certainty.

Although no option has ever been exercised, the contention of RCA Corporation is that the "economic compulsion" upon the state at some time to exercise the option is sufficient to require the construction of the agreements as conditional sales for tax purposes. The very "economic compulsion" which the taxpayer urges has been suspect as a badge of illegality.

(Cf. *In re City and County of San Francisco* (1925) 195 Cal. 426, 438 [233 P. 965]; *McClain* v. *County of Alameda* (1962) 209 Cal.App.2d 73, 75 [25 Cal.Rptr. 660]; *Chester* v. *Carmichael* (1921) 187 Cal. 287, 292 [201 P. 925]; but cf. *City of Oxnard* v. *Dale* (1955) 45 Cal.2d 729, 735 [290 P.2d 859].)

Where public agencies are concerned, constitutional and statutory debt limitations have held true conditional sales contracts to be invalid, where the entire consideration to be paid under the contract became a liability upon execution of the agreement and exceeded the constitutional debt limitations.

In a public contract, efforts are made in California to insure that, unlike a general conditional sales contract, every separate payment is supported by its own consideration and is not simply an aliquot part of a total indebtedness, and that such separate payment falls within the budgetary allotment provided for that year or budgetary period. (*Dean* v. *Kuchel* (1950) 35 Cal.2d 444, 447 [218 P.2d 521].)

The provisions of the agreements here drafted to avoid the prohibitions of California Constitution, article XVI, section 1, establish conclusively that they are in fact, agreements for lease and hire of the data processing systems, and for associated services; and that the unexercised options to purchase do not transmute the arrangement into a conditional sale. This is true, even though a final payment of $1.00 plus the accrued rentals, exercises an option. In *Lagiss* v. *County of Contra Costa* (1963) 223 Cal. App.2d 77, 90 [35 Cal.Rptr. 450], it is stated: "In the instant case, the exercise of the option by the County in the final year by the payment of the sum of $1.00 is equivalent to the obtaining of title by the County by the payment of the aggregate rentals provided for in the lease as in the *Dean* case. . . . As pointed out in *Dean*, the vesting of title at the end of the term without the payment of anything other than the rentals under the lease does not disqualify the instrument as a lease for the purpose of the debt limitation." The situation is parallel in the RCA Corporation-state contracts.

Omitting reference to those provisions which RCA Corporation admits characterize the agreements as for "lease" and "hire," the following provisions seem conclusive:

(1) During the term of the agreements, upon the anniversary date, the state may elect to purchase the data processing systems, or any constituent elements thereof, each of which is given a purchase price, with credits given for paid rentals upon the purchase price.

(2) Annual rentals are paid. The anniversary dates of the agreement

fall after the period when the state budget is adopted in budget years; and it is expressly provided that the state's monetary obligations are contingent upon budgetary appropriations therefor. (Cf. *City of Los Angeles* v. *Offner* (1942) 19 Cal.2d 483, 486-487 [122 P.2d 14, 145 A.L.R. 1358].)

(3) The state does not take any title unless an option is exercised.

(4) The state may unilaterally cancel the agreement as of any anniversary date of its signing, upon 60 days' prior notice. No penalty is imposed upon the state if it chooses to cancel the agreement.

(5) Upon any termination of the agreement (other than if the option is exercised), the lessor, RCA, is to receive back the equipment, and the only obligation of the state is to load it for shipment, as specified.

(6) Paragraph 20 of Rider A provides: "Title to equipment, accessories and devices rented under this contract shall remain with the Contractor. All devices and accessories furnished by the Contractor, except those purchased by the State, shall accompany the equipment when returned to the Contractor."

(7) Except for its own fault or negligence, the state is relieved of all risks of loss or damage to the equipment during periods of transportation, installation and during the entire time the equipment is in the possession of the state.

(8) Rider A, paragraph 7a.(1), provides: "Prior to the exercise of the Option to Purchase the Contractor shall keep the equipment in good condition and shall always be responsive to the maintenance requirements of the State. . . ."

(9) Rider A, paragraph 2, provides:

"a. This contract is effective from the date hereof, and the term of the lease of the equipment is from October 27, 1967, to October 27, 1974, subject to the terms hereof.

"b. Rider B shall designate the installation date, and, if applicable, removal dates of each machine to be leased under this agreement."

The provisions relative to purchase are:

"21. Purchase Option

"a. The State may, at any time following acceptance of the equipment, purchase any or all machines at the Contractor's prices shown on Rider B, less the Purchase Option Allowance associated with that price machine.

"b. The Purchase Option allowance is calculated by multiplying the

number of monthly payments paid times 1/84 of the 'Purchase Price' of the equipment on which the option is being exercised.

"c. The State shall specify by model and serial number the equipment to be purchased. The rental charges shall be discontinued as of the close of business of the day immediately preceding the date of payment of the purchase price.

"d. Upon exercise of the Purchase Option the Contractor agrees to perform Maintenance Service on the equipment involved on terms equal or better than the Contractor's commercial maintenance rates at that time, if requested by the State."

 The willingness of RCA Corporation to sell the entire equipment and system at the end of the lease period for rentals paid, if the state exercises the option, does not characterize the entire lease as a sale. The testimony before the assessment appeals board by RCA Corporation representatives was that by the end of the seven-year lease period, there would not be a residual value, considering the rapid advances in data processing technology and equipment producing economic obsolescence, and the cost of removing, transporting and reconverting the equipment.

The same advances in technology, changes in the needs of the state department concerned, the performance record of the equipment, and advantages which might be offered by other systems, possibly could induce the state to require the RCA Corporation to remove its equipment, to make way for other devices. There is no firm commitment otherwise.

 The transaction solely was that of leasing and hire, with an option to purchase. (*Western Machinery Co.* v. *Graetz* (1940) 42 Cal.App.2d 296 [108 P.2d 711]; *Automatic Voting Mach. Corp.* v. *Maricopa County, supra,* 50 Ariz. 211 [70 P.2d 447]; (a tax case); *Oberan* v. *Western Machinery Co.* (1946) 65 Ariz. 103 [174 P.2d 745, 748]; *Charleston Transit Co.* v. *James* (1939) 121 W.Va. 412 [4 S.E.2d 297, 299]; *Western Material Co.* v. *Deltener* (1935) 64 S.D. 62 [264 N.W. 207]; *Kearney & Trecker Corporation* v. *United States* (D.C.Wis. 1961) 195 F.Supp. 158; *Bradshaw* v. *General Motors Acceptance Corporation* (D.C.Pa. 1937) 19 F.Supp. 993; *Sherer-Gillett Co.* v. *Pilsbury* (C.C.La. 1921) 269 F. 595, 596; *In re Miller Vein Coal Co.* (D.C.Pa. 1933) 3 F.Supp. 607, 608; *Vella* v. *United States Fidelity & Guaranty Co.* (1939) 257 App.Div. 459 [13 N.Y.S.2d 962].) There are significant differences, under the state of the record here, with the facts developed in *Collins Electrical Co.* v. *County of Shasta* (1972) 24 Cal.App.3d 864 [101 Cal.Rptr. 285].

### G. *The equalization procedure is incomplete and errors are noted.*

Convinced that the transactions were conditional sales, the board did not complete the equalization process, though evidence was presented by both the assessor and the taxpayer respecting the assessment made. The assessor and the taxpayer were at odds: (1) concerning the residual value of the leased property at the end of the lease upon reversion to the lessor; (2) depreciation; (3) the use of the contract price by the assessor as the basis of valuation without stripping therefrom the portion thereof for the services rendered under the contracts; and (4) the refusal of the assessor to consider sales made of the same system as "hardware" without the accompanying services. Some of these matters were specified in the opinion and order of the board, dated May 8, 1970.

We concur with the opinion of the board that the assessor was in error when he accepted the full contract price in each case as the basis of valuing the property, including therein the service or "software" intangibles, failing to consider in that regard the out-of-country sales made by RCA stripped of such intangibles. The idea that because these sales were in part for resale by the purchaser, they were on a "sales level" which should not be considered, is patently erroneous. The sales price was not the "book value of the inventory." (Cf. *Glidden Company* v. *County of Alameda* (1970) 5 Cal.App.3d 371, 380 [85 Cal.Rptr. 88].) As operative on the lien dates in question[5] Revenue and Taxation Code section 110 established the criteria for *value*: " 'Value,' 'full cash value' or 'cash value' means the amount at which property would be taken in payment of a just debt from a solvent debtor. . . ." It stands to reason that if the only market for a unique system is wholesale or foreign, it should be considered.

### H. *Appropriateness of the remedy.*

In this, and in the two other appeals, the question arises as to the appropriate remedy for review of the assessment proceedings These paragraphs relate to all three appeals.

 The exclusive means of review of tax proceedings in California has been the remedy of suit to recover alleged overpayments, and the power of the state to provide such suit as the exclusive remedy is unquestioned. (*People* v. *Skinner* (1941) 18 Cal.2d 349, 356-357 [115 P.2d 488, 149

---

[5]Operative as of the lien date in 1972, Revenue and Taxation Code section 110 reads as follows: " 'Full cash value' or, 'market value' or, 'value' means the amount of cash or its equivalent which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other and both with knowledge of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions upon those uses and purposes." (Stats. 1971, ch. 1542, § 2.)

A.L.R. 299]; *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 725-726 [192 P.2d 916]; *Aronoff* v. *Franchise Tax Board* (1963) 60 Cal.2d 177, 179-180 [32 Cal.Rptr. 1, 383 P.2d 409]; *Jillson* v. *Board of Supervisors* (1963) 221 Cal.App.2d 192 [34 Cal.Rptr. 419]; see *Tieberg* v. *Superior Court* (1966) 243 Cal.App.2d 277, 281 [52 Cal.Rptr. 33]: " 'the remedy of suit to recover taxes paid has expressly been made the exclusive means of obtaining a judicial review of the legality of the assessment.' ")

Where an assessment is not wholly void, an action to obtain a refund of taxes paid is in fact a proceeding to review the decision of the board of equalization, in which the function of the trial court is to determine whether a correct method of valuing the property was followed, and then to ascertain whether there was substantial evidence before the board to justify the assessment as made. An action to recover taxes paid under protest savors of certiorari or review. (*Eastern-Columbia, Inc.* v. *County of L. A., supra,* 61 Cal.App.2d 734.)

A writ of mandamus or a writ of prohibition only issues when there otherwise is no speedy and adequate remedy at law. (Code Civ. Proc., §§ 1086, 1103.) The special procedure established by Revenue and Taxation Code sections 5136 through 5143, allowing the taxpayer to pay the disputed tax under protest and to sue for refund, is such an adequate remedy and mandate is denied. (*Star-Kist Foods, Inc.* v. *Quinn, supra,* 54 Cal.2d 511-512.) Since the suit is brought against the county or other tax-collecting agency, the remedy is adequate for it as well. (Consult also, *Jillson* v. *Board of Supervisors, supra,* 221 Cal.App.2d 194-195, decided by this court.)

This special procedure prevails over any other general statutory remedies under long-established rules. (Cf. *Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726 [108 P.2d 443]; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *Simpson* v. *Cranston* (1961) 56 Cal.2d 63, 69 [13 Cal.Rptr. 668, 362 P.2d 492]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

Where the procedure for testing the validity of the assessment and the tax levied pursuant thereto is applicable, through a payment under protest and suit for refund, there is no right to employ administrative mandamus, under Code of Civil Procedure section 1094.5.

The institution of Code of Civil Procedure section 1094.5 arose through the necessity of providing review for agencies exercising quasi-judicial

powers, when the Supreme Court held that certiorari could not constitutionally be employed, except where the action to be reviewed was truly an exercise of judicial power. The boards of equalization, however, have such powers directly conferred by the Constitution (Cal. Const., art. XIII, §§ 9, 9.5), as well as some other agencies. The Supreme Court holds that regular writs of mandamus and certiorari can be directed to such agencies, when appropriate. (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 638 [234 P.2d 981].) They are not appropriate where the suit for refund provides an adequate remedy at law. (*Star-Kist Foods, Inc.* v. *Quinn, supra,* 54 Cal.2d 511.)[6]

■ In the unusual situation presented here, the county has no adequate remedy at law. The questioned assessment was cancelled, the taxpayer's liability deleted from the tax rolls and the money paid under protest by RCA Corporation was refunded. The procedure to review the tax proceedings is proper, whether labelled administrative mandamus (Code Civ. Proc., § 1094.5), regular mandamus (Code Civ. Proc., § 1084 et seq.), or certiorari (Code Civ. Proc., § 1067 et seq.). The extent of the review is the same. (Cf. *Boren* v. *State Personnel Board, supra,* 37 Cal.2d 638; *Eisley* v. *Mohan, supra,* 31 Cal.2d 640; *Allen* v. *Humboldt County Board of Supervisors, supra,* 220 Cal.App.2d 881-882; *County of L. A.* v. *Tax Appeals Bd. No. 2* (1968) 267 Cal.App.2d 830, 836 [73 Cal.Rptr. 469]; *Griffith* v. *County of Los Angeles* (1968) 267 Cal.App.2d 837, 841 [73 Cal.Rptr. 773].)

■ As we have determined that Assessment Appeals Board No. 2 did not perform its full duty conformably to law, the writ of mandate should issue from the trial court to order its compliance. (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 721; *Universal Cons. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353, 362-363 [153 P.2d 746].) The cause should be remanded by the trial court to the assessment appeals board to ascertain the value of RCA Corporation's interest. (*Parr-Richmond Industrial Corp.* v. *Boyd, supra,* 43 Cal.2d 172.)

---

[6]This point was not presented to or considered by the court in *County of L. A.* v. *Tax Appeals Bd. No. 2* (1968) 267 Cal.App.2d 830 [73 Cal.Rptr. 469]. It is perhaps significant that this appears to be the only reported decision in the 28 years since adoption of Code of Civil Procedure section 1094.5, attempting to apply that section to a tax proceeding, involving a board of equalization. If, as held therein, the county or any of the agencies for which the county collects taxes is an "interested party" that may demand review of the board of equalization proceedings—even if all other taxing agencies may be satisfied—and without any strict time limitations, the entire taxing process could be impeded or disrupted. In making payment of the tax under protest and suit for refund the exclusive remedy, such potential disruptions are avoided.

RCA Corporation should not be prejudiced by reason of the remand of this matter to Assessment Appeals Board No. 2. After the remittitur and within a reasonable time to be fixed by the trial court, RCA Corporation may redeposit the amount paid under protest on August 31, 1970. It shall have six months after the date of such redeposit to file suit, if any be necessary, to recover the taxes paid under protest. The county shall not be liable to RCA Corporation for interest on all or any part of the sum so paid under protest, except for the period that the same has been held by the county. No penalties are chargeable to RCA Corporation beyond those due, if any, as of the original date of deposit under protest, August 31, 1970.

Under the facts of this case, the above determination has been made by this court as adjunct to the equitable procedure for tax refund in default of statutory or decisional precedents to undo the county's affirmative action of refunding a tax and to litigate its right to recoup the refund. (Code Civ. Proc., § 187; *Traffic Truck Sales Co.* v. *Justice's Court* (1923) 192 Cal. 377, 382 [220 P. 306].) It will leave the parties in a proper position to litigate, if necessary, the validity of the reassessment or assessment to result from the remand to the assessment appeals board.

## II.

Turning to the appeal in 3 Civil 13523:

For the tax year 1970-1971, the assessor again assessed the property[7] held by the state under the same agreements; and pursuant thereto, RCA Corporation paid taxes in the sum of $347,086.76 under protest. It had filed an application for reduced assessment with the assessment appeals board (No. 2011) on September 11, 1970. The appeals board set the matter for hearing on January 28, 1971. The county counsel advised the company the appeal would not be heard, on the ground that the board had no jurisdiction. The contention was that the application, as before, praying to reduce the assessment to zero, amounted to a request for an "exemption" which the board had no power to grant. At the time of hearing, the county counsel advised the board it had no jurisdiction to proceed. The board ruled that it did have jurisdiction and reset the hearing for April 15, 1971.

On April 6, 1971, the county filed a petition for writ of prohibition, alleging that only a claim for exemption was involved, that there was no matter of valuation presented to the board. The board was restrained, and on January 27, 1972, the superior court issued the peremptory writ (Sacramento County No. 210886). This was appealed and is the second matter before us on these consolidated appeals. Upon this appeal, Joseph E. Burke,

---

[7]Pursuant to the contract terms some additional items were added.

member of the bar who is a member of the Assessment Appeals Board No. 2, was given permission to file a brief amicus curiae, supporting the board and its claim of jurisdiction.

Since, under the authorities already considered, it is clear that the board has the power to determine its jurisdiction in the first instance that questions of valuation were involved, that the assessment appeals board in the first instance has power to determine valuation based upon established legal rules, and that no question of an "exemption" is involved, the issuance of the writ of prohibition was in error.

Meanwhile, on February 23, 1971, RCA filed a complaint in the superior court to recover the taxes paid under protest. Such an action must be brought within six months after payment. (Rev. & Tax. Code, §§ 5136-5138.) This is Sacramento Superior Court action No. 209559, of which we take judicial notice. (Evid. Code, §§ 450-459.) The county's cross-complaint in this suit has been discussed, *supra*.

### III.

Turning to the appeal in 3 Civil No. 13732:

For the tax year 1971-1972, the assessor again assessed RCA Corporation for the property in possession of the state under the contracts, in the sum of $10,653,164. RCA Corporation again paid the tax based thereon under protest in the sum of $346,254.42 on August 30, 1971. Thereafter, on September 14, 1971, RCA Corporation filed its application for reduction of assessment No. 3016 before the Assessment Appeals Board No. 2. The county counsel advised the board it had no jurisdiction and instructed the clerk of the board to reject the application on the ground it "failed to state . . . [the] full cash value" of the property, which so far as their tax liability was concerned RCA contended should be reduced to zero.

RCA then made a written demand for a hearing, and one was set by the board for November 12, 1972. At that time, the county counsel again advised that the board had no jurisdiction; and the board then refused to proceed. RCA moved to amend its petition for a reduction, so as to assert a value in the alternative to which it would claim a reduction should the board determine it was an assessable owner. The county counsel again asserted the board had no jurisdiction and, further, that September 15 was the deadline for filing requests, treating this amplification of the original request as a new one. On advice of counsel, the board refused the amend-

ment. RCA Corporation asserts that the board did proceed, nevertheless, in other similar cases.

A suit was brought in mandamus to compel the board to proceed. The county's demurrer was sustained without leave to amend, and upon dismissal, RCA brought this third matter before us by its appeal No. 13732.

RCA Corporation was denied the relief sought solely because the board refused jurisdiction upon erroneous advice of the county counsel. Therefore, RCA properly applied for a writ of mandamus to compel the board to proceed, which was improperly denied, and which will be ordered upon this appeal. (*Flying Tiger Line, Inc.* v. *County of L. A., supra,* 51 Cal.2d 322; *Erlich* v. *Superior Court* (1965) 63 Cal.2d 551, 556 [47 Cal.Rptr. 473, 407 P.2d 649]; *Memorial Hosp. of So. Cal.* v. *State Health Planning Council* (1972) 28 Cal.App.3d 167, 177 [104 Cal.Rptr. 492].)

 ·Equalization is an equitable proceeding. The taxpayer invoking it or seeking to recover taxes paid under protest (also an equitable proceeding) undertakes to pay the taxes which it is found are equitably due from him. (*Pacific Fruit Express Co.* v. *McColgan* (1944) 67 Cal.App.2d 93, 96 [153 P.2d 607].)

Although the property owner believes and states his taxable interest has zero valuation, that but opens the door for the hearing just as the prayer of a complaint is sufficient to invoke jurisdiction of a court. Because the board may find that the valuation of a taxable interest is $50,000 or $150,000 or any other sum, where the taxpayer claimed it was zero, does not render the request for equalization ineffective. When, to meet varying contentions as to value, the taxpayer desires to amend a pending petition for equalization to state a value if those contentions are sustained, or to state several figures, each contingent upon the proof before the board, such amendments are not to be ruled out (as contended by the county counsel) because each was ·not down on paper before the September 15 closing date for original equalization requests. Such relief is not different from or in addition to that requested; it still relates only to the quantum of relief embraced under the original request. This does not contravene the fair intendment of the rules of procedure of either the board of supervisors or the state board of equalization.

## IV.

These cases have been complicated by the manifest conflicts of interest in which the county counsel has been immersed. Pressed, no doubt, by the county and the board of supervisors to recover the tax refund paid out and

to prevent any more from being ordered, he has brought suit against the assessment appeals board, while at the same time purporting to continue as its legal adviser. He brought suit to prohibit its exercise of its functions, while it declared it had jurisdiction. In these consolidated appeals, one attorney member of the assessment appeals board has appeared in propria persona to assert the jurisdiction of the board, denigrated by the county counsel in argument before us.

The California Constitution, article XIII, section 9.5, provides in part in relation to assessment appeals boards: "The board of supervisors shall . . . provide such clerical and other assistance as is necessary therefor . . . ." The Board of Supervisors of Sacramento County has the power to provide for independent legal counsel at the request of such a board, and in the case of manifest conflicts of interest, such as in these cases, we hold that it has a duty to do so. (Cf. *State Compensation Ins. Fund* v. *Riley* (1937) 9 Cal.2d 126, 131-133 [69 P.2d 985, 111 A.L.R. 1503].)

### V.

The judgment against the County of Sacramento and its board of supervisors in Sacramento Superior Court action No. 224045 (appeal 3 Civil 13800) is reversed, and the cause remanded to the Superior Court of Sacramento County with directions to enter a new judgment, pursuant to the determinations made herein; and to issue its peremptory writ of mandate to County Assessment Appeals Board No. 2, directing that said board annul its decision and opinion relative to the requests for equalizaton Nos. 1092, 1093 and 1094 by RCA· Corporation, covering the tax years 1967-1968, 1968-1969 and 1969-1970; and that it proceed to consider and determine the asserted misclassification and overvaluation upon the evidence heretofore received and such additional evidence as may be tendered by the county assessor and the RCA Corporation; that the superior court shall further incorporate in its judgment and writ the provisions specified, *supra,* allowing RCA Corporation to redeposit the taxes paid under protest for such tax years, and the other rights in relation thereto hereinabove specified. Appellants will recover their costs of suit on appeal No. 13800.

The judgment against the RCA Corporation in Sacramento Superior Court action No. 210886, appeal No. 13523, is reversed, and the cause remanded to the superior court with directions to enter a new judgment in accordance with this decision, to quash the peremptory writ of prohibition heretofore issued, and to issue a peremptory writ of mandate directed to County Assessment Appeals Board No. 2, ordering that it proceed to calendar and hear the application for reduction of assessment No. 2011 filed by RCA Corpora-

tion for the tax year 1970-1971, in accordance with the opinion of this court; and appellant RCA Corporation will recover its costs of suit.

The judgment in Sacramento Superior Court action No. 220273, appeal No. 13732, is reversed, and the cause remanded to the superior court, with directions to enter a new judgment, pursuant to the determinations hereinabove made; and to issue its peremptory writ of mandate to County Assessment Appeals Board No. 2, requiring that it calendar, hear and determine request No. 3016 of RCA Corporation for equalization, and any contingent alternate valuations presented thereunder, in regard to the assessment for the 1971-1972 tax year, conformably to this decision; appellant RCA Corporation to recover its costs of suit.

Friedman, Acting P. J., and Janes, J., concurred.

The petition of RCA Corporation for a hearing by the Supreme Court was denied July 25, 1973.