Filed 12/30/20  Michalak v. County of Calaveras CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| MATTHEW MICHALAK et al., | C088001 |
| Plaintiffs and Appellants, | (Super. Ct. No. 18CV43075) |
| v. | |
| COUNTY OF CALAVERAS et al., | |
| Defendants and Respondents; | |
| BARBARA SULLIVAN, as Tax Collector, etc., | |
| Real Party in Interest and Respondent. | |

Petitioners Matthew Michalak and Mark Flanagan applied to register as authorized marijuana cultivators in Calaveras County pursuant to a county ordinance.  While their applications were pending, the County of Calaveras Assessor's Office issued a tax assessment pursuant to the county's authority to tax registrants for the privilege to cultivate marijuana.  Petitioners appealed the assessments, arguing they did not cultivate

1

marijuana on the parcels and were told by the county that their applications to do so were going to be denied.  A county hearing officer upheld the assessment.

Petitioners filed a petition for writ of mandate and complaint for declaratory relief in the superior court.  Respondents County of Calaveras (County) and Calaveras County Office of Administrative Hearings (OAH) demurred on the basis that petitioners failed to pay the tax assessment and request a refund.  The trial court agreed and granted respondents' demurrer without leave to amend.

On appeal, petitioners claim the trial court erred in granting respondents' demurrer.  Petitioners assert (1) the requirement that they pay the tax and file a refund action before seeking judicial relief applies only to state taxes, not local taxes; (2) respondents must be equitably estopped from invoking the "pay first, litigate later" rule because it expressly consented to petitioners' petition for writ of administrative mandate; (3) their complaint for declaratory relief should have survived demurrer; and (4) federal law preempts the County's ordinances regarding marijuana cultivation.

After initial briefing was complete, we ordered supplemental briefing on several issues, which we detail when necessary to our discussion below.[1]

---

[1]  We ordered supplemental briefing on January 15, 2020, due on February 14; counsel Hugo Torbet immediately requested a continuance which we granted to March 23 with the notation that no further time would be granted.  We then granted a second lengthy continuance (requested on March 16) to June 22, noting again that no further time would be granted.  On June 15, counsel moved for yet another 90-day continuance, to which respondents filed opposition; we denied the request.  Mr. Torbet then submitted his supplemental brief, which opened with a tirade captioned as an "Objection."  This tirade includes, as but one example, Mr. Torbet's opinion that "there is no good reason why the law libraries are closed, except that in the end, the courts have become complicit in the relentless march towards the effective repeal of the Bill of Rights, freedom being the ultimate friction on profit taking.  Denial of equal access to the courts is merely part and parcel of the process in which the actors in our captured government are betraying the Constitution and the oaths many of them have taken.  If this weren't true, the Courts would open online research to the public to aid in the guarantee of the right of the people to equal justice."  An order to brief additional questions as assigned by this court is not an

2

As we explain, we conclude that because the applicable code section did not require payment of the disputed tax, and petitioners lack an adequate remedy at law, petitioners were not required to pay the tax before petitioning for writ of mandate in the superior court. We agree, however, that the trial court properly sustained the demurrer regarding petitioners' complaint for declaratory relief. Because we reverse the superior court's sustaining of the County's demurrer with respect to the petition for writ of mandate, we do not address petitioners' remaining claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Statutory Scheme*

On May 10, 2016, the Calaveras County Board of Supervisors passed and adopted an ordinance adding former chapter 17.95 to the Calaveras County Code.[2] Section 17.95.165 required anyone currently cultivating or intending to cultivate cannabis to register with the county planning department. Upon submitting a complete application for registration, the planning department issued an "Application Pending" document pending verification. (*Id.,* subd. (C).) Once the planning department determined the application met the registration criteria, it issued a "Certificate of Registration." (*Ibid.*)

On November 8, 2016, the voters of Calaveras County passed Measure C, which added chapter 3.56 to the County Code. Section 3.56.030, subdivision (A) provided in part: "The board of supervisors may impose a tax on the privilege of cultivating,

open invitation to spew vitriol and baseless allegations. Given the stress of the ongoing COVID-19 pandemic and trusting that Mr. Torbet's lapse in professionalism is merely a one-time consequence thereof, we have chosen to disregard his unprofessional screed.

[2] Further undesignated statutory references are to the Calaveras County Code. On January 10, 2018, the board of supervisors repealed the marijuana cultivation ordinance and enacted the current chapter 17.95, which prohibits to the maximum extent permitted by state law the cultivation, manufacture, testing, distribution, transportation, and storage of cannabis. The events relevant to this opinion occurred before the repeal of former chapter 17.95, and all references to the chapter in this opinion are to the version in place at the time.

manufacturing, processing, donating, selling, delivering or distributing cannabis, or manufacturing, processing, donating, selling, delivering or distributing medical cannabis or a medical cannabis by-product by a licensee legally operating within the county . . . ." Subdivision (B) of that section imposed a tax of "[t]wo dollars per square foot of registered or permitted canopy area."

Section 3.56.130 described the procedure by which aggrieved taxpayers could challenge assessed taxes. It allowed for the taxpayer to appeal to a county hearing officer authorized by the board of supervisors. (*Id.*, subd. (C).) Section 3.56.130, subdivision (C)(5) provided that the hearing officer shall issue quasi-adjudicatory findings within 30 days of the conclusion of the hearing, which "shall be final and binding."

Section 3.56.130, subdivision (C)(6) provided: "Any amount determined to be due shall be due and payable immediately upon the decision of the [hearing officer]. Said determination shall be the final level of administrative appeal. The finding shall also notify appellant of further rights to appeal under the Code of Civil Procedure."

Section 3.56.150, subdivision (A) stated that a tax payment "may be refunded as provided in subsection (b) of this section; provided a written claim, stating under penalty of perjury the specific grounds upon which the claim is founded, is filed with the tax collector within three years of the date of payment." Subdivision (B), referenced by subdivision (A),[3] provided: "A person licensed to engage in commercial cannabis activity may claim a refund or take as credit against taxes collected and remitted any amount overpaid when it is established, in a manner prescribed by the tax collector, that a refund is due."

---

[3] Subdivision (A) refers to "subsection (b)," not "subsection (B)," but in the absence of a "subsection (b)," we presume the reference to "subsection (b)" is actually to "subsection (B)."

4

*Factual Background*

The following facts are alleged in petitioners' petition for writ of administrative mandate and complaint for declaratory relief. In reviewing an order sustaining a demurrer, we assume the factual allegations properly pleaded to be true. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Petitioners own two parcels of real estate in Calaveras County. In May and June 2016, petitioners filed applications to register each parcel as a medical cannabis cultivation facility. In April 2017 the County sent an authorized code compliance officer to inspect both facilities for compliance with applicable codes. The officer informed petitioners that their applications would not be approved due to code violations. The officer also lodged reports with the county planning department documenting code violations and recommending that the applications be denied. The County never issued petitioners certificates of registration for the subject properties and "eventually" denied their applications.[4] Petitioners did not cultivate commercial cannabis on their properties.

In May 2017 the planning department sent a list of properties with pending applications or certificates of registration to the assessor's office. Petitioners each received a tax bill as their applications were pending at the time of the assessment. Petitioners received a $10,000 tax bill related to each property, which was the first of two installments. Petitioners informed the County they were not cultivating marijuana on their properties and invited the County to inspect the properties. The County informed petitioners that they failed to show that no cultivation occurred, and the tax was based on their applications; consequently, it would not decrease or withdraw the tax assessment.

---

[4] The petition does not assert when this denial occurred.

*Administrative Appeal History*

Petitioners appealed their tax assessments to a neutral hearing officer retained by the OAH. (§ 3.56.130, subd. (C).) As required by the ordinance, the hearing officer held a hearing, petitioners offered evidence, and the hearing officer issued a final administrative order upholding the tax assessment. The order rejected petitioners' argument that the tax does not apply because they did not cultivate cannabis; the order concluded section 3.56.030, subdivision (A) provides the tax is for the authorization to engage in cannabis cultivation, not for the proceeds of cultivation. Next, the hearing officer rejected petitioners' argument that the tax can only be applied to a completed registration, concluding the code permits taxing applications that are pending but have not yet been approved. Then the order rejected petitioners' argument that the tax should not apply because the code compliance officer informed them of code violations; the order observed the code compliance officer did not have authority to deny petitioners' applications and could only inform the planning department of violations. The order noted that petitioners failed to contact the planning department to ascertain the status of their applications, which would have clarified any ambiguity, or withdraw their applications, which would have prevented the tax from being assessed.

The order concluded, "[Petitioners] must pay the fines and penalties. . . . [¶] [Petitioners] **SHALL** pay the Calaveras County Tax Collector the sum of $12,100 each for Mr. Flanagan and Mr. Michalak," which included $10,000 for the assessment and $2,100 in penalties. The order notified petitioners of their right to appeal: "You may challenge this order by filing a writ of mandate pursuant to California Code of Civil Procedure §§ 1094.5 and 1094.6 in the Calaveras County Superior Court within 90 days of the service of this order. You may challenge the decision imposing/modifying the penalty by filing an appeal, pursuant to Government Code § 53069.4(b) within 20 days of service of this decision."

6

Petitioners neither paid the tax nor requested a refund of taxes paid pursuant to section 3.56.150.

*Procedural History*

In February 2018 petitioners jointly filed a petition for writ of mandate and complaint for declaratory relief in superior court. The petition for writ of mandate asserted the hearing officer's decision was legally erroneous, that the hearing officer proceeding without, or in excess of, jurisdiction, failed to provide a fair trial, and prejudicially abused his discretion. The petition further asserted petitioners had exhausted their administrative remedies, did not have an adequate remedy at law, and the County consented to review of the decision pursuant to a writ of mandate.

Petitioners' complaint for declaratory relief included a request "that the court issue a declaratory judgment that respondent County of Calaveras and real party in interest Barbara Sullivan may tax only lawful commercial cannabis cultivation, that commercial cannabis cultivation is lawful only if a Certificate of Registration has been issued, and that an applicant or registrant has the right to amend a registration form to include the true information about the plot size dedicated to commercial cannabis cultivation, which amended registration form will then serve as the basis for the tax computation."

Respondents demurred to the petition and complaint. They argued petitioners were barred from challenging the tax assessments by the "pay first, litigate later" rule, and petitioners failed to plead facts sufficient to constitute any cause of action.

The trial court sustained respondents' demurrer without leave to amend. The court disagreed with the County that the petition failed to plead facts constituting a cause of action, concluding the arguments raised by the County extended beyond the allegations in the pleading and were premature in the context of a demurrer. However, the court agreed with the County that petitioners failed to exhaust their administrative remedies by paying the tax, filing a claim for refund, and if denied, suing for refund of the taxes paid. Accordingly, the court granted the County's demurrer on that basis.

7

# DISCUSSION

## I

### *Standard of Review*

On appeal from a dismissal entered after an order sustaining a demurrer to a petition for writ of mandate, we review the order de novo, determining independently whether the petition states a cause of action as a matter of law. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869.) "We give the petition a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged." (*Ibid*.) We also accept as true all recitals of evidentiary facts contained in exhibits attached to the petition. (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375.) We interpret the petition's allegations liberally, with a view toward substantial justice between the parties. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.) If the facts alleged by the petitioner state a cause of action under any possible legal theory, we will order the demurrer overruled. (*City of Morgan Hill*, at p. 870.)

## II

### *"Pay First, Litigate Later" Rule*

Petitioners contend the "pay first, litigate later" doctrine enshrined in section 32 of article XIII of the California Constitution does not require them to pay the assessed tax, request a refund, and sue for a refund.[5] We agree the pay first, litigate later rule is inapplicable here. By its express terms, article XIII, section 32 applies only to actions against the State or officers thereof, and we decline to apply the pay first rule based

---

[5] Further references to article XIII, section 32 are to article XIII, section 32 of the California Constitution.

8

solely on public policy principles. Further, while the County was not precluded from including an explicit pay first requirement in its ordinance, provided the requirement comported with due process, it did not do so, and no statute requires petitioners to pay the tax before petitioning for a writ of mandate.

      A. *Article XIII, Section 32 and Public Policy*

      " 'A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as "pay first, litigate later," is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions.' [Citation.] Section 32 [of art. XIII] provides: 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature.' This constitutional provision establishes that 'the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid.' " (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

      By its express terms, article XIII, section 32 only requires prepayment of taxes before bringing suits against "this State or any officer thereof," and therefore the constitutional provision is not applicable here.[6] (See, e.g., *Eisley v. Mohan* (1948) 31 Cal.2d 637, 641 [construing former art. XIII, § 15]; *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 670; *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 281, fn. 6 [art. XIII, § 32 "applies only to actions against the state"; availability of mandate to review claims against county tax authorities subject to

---

[6] Neither party contends the tax at issue here was assessed by the State or an officer thereof.

statutory test of § 1085]; *County of Los Angeles v. Superior Court* (2008) 159 Cal.App.4th 353, 363, fn. 6.].)

We recognize, however, that article XIII, section 32 is not the genesis of the pay first, litigate later rule. Rather, the public policy underlying article XIII, section 32 was established well before its predecessor provision was added to the California Constitution in 1910: "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public." (*Dows v. City of Chicago* (1870) 78 U.S. 108, 110.) While article XIII, section 32 embodies the principle that courts should refrain from enjoining collection of taxes, the California Supreme Court was enforcing the principle before the adoption of the predecessor of article XIII, section 32. (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 495-496.)

Accordingly, the County contends the pay first, litigate later rule applies equally to taxes levied by localities as to those levied by the State. In support, it points to *Writers Guild of America, West, Inc. v. City of Los Angeles* (2000) 77 Cal.App.4th 475 (*Writers Guild*), and *Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129 (*Flying Dutchman*). In *Writers Guild* the Second Appellate District, Division Two analyzed whether an association of writers was entitled to seek injunctive and declaratory relief without first paying a tax owed under a local tax ordinance. The court recognized taxpayers do not have a due process right to prepayment judicial review of tax liability, and " '[t]he power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned.' " (*Writers Guild*, at pp. 480-481.) The appellate court acknowledged the cases it relied upon all involved California constitutional and statutory

10

prohibitions against granting injunctive relief against the collection of taxes, but it asserted: "the strong public policy requiring a taxpayer to pay the tax and sue for a refund is manifest." (*Id.* at pp. 481, 483.)

In *Flying Dutchman*, *supra*, 93 Cal.App.4th 1129, the First Appellate District, Division Two followed *Writers Guild*. There, the plaintiff proceeded through the administrative process established by the relevant municipality to challenge a municipal parking tax. At the conclusion of that process, the tax became due and payable. Rather than pay the tax, the plaintiff filed a petition seeking mandamus, injunctive, and declaratory relief. Disagreeing with the plaintiff's assertion that the pay first, litigate later rule applies only to state-imposed taxes, the appellate court concluded that, as a matter of public policy, the "prepayment requirement for obtaining judicial review applies equally to local taxes as well as state taxes." (*Id.* at p. 1137.)

While we recognize and agree with the general public policy justification for maintaining government operations through predictable tax revenue streams and limiting the ability of taxpayers to impede tax collection, these longstanding public policy principles are not applicable to the specific situation presented in this case. Critically, in this case the cannabis cultivation tax was adopted by ballot proposition on November 8, 2016, and the marijuana cultivation scheme was repealed on January 10, 2018, a mere 14 months after the initial adoption of the tax ordinance. Therefore, impeding collection of the cannabis cultivation tax at issue here will not "derange the operations of government, and thereby cause serious detriment to the public." (*Dows v. City of Chicago*, *supra*, 78 U.S. at p. 110.) Rather, "[t]here is no need to 'minimize disruptions' in the tax collection procedure because, in this case, there is nothing to disrupt." (*City of Anaheim v. Superior Court* (2009) 179 Cal.App.4th 825, 832 (*City of Anaheim*).) We decline to enforce a pay first rule in this case based solely on article XIII, section 32 or public policy.

11

B.  *Statutory "Pay First" Requirement*

Although we have declined to read a pay first requirement *into* the ordinance for the reasons stated, a local government is not precluded from including a pay first requirement in a statute or ordinance, provided the requirement comports with due process.  (*City of Anaheim*, *supra*, 179 Cal.App.4th at p. 831.)  Due process, in turn, requires that the statute or ordinance provide an adequate remedy at law to contest the legality of the tax.  (*Ibid.*)  "The 'adequate remedy at law' most often takes the form of a refund procedure provided for in the applicable statute, and courts have consistently upheld 'pay first' requirements in matters involving local taxes where the taxing authority has specifically provided for a refund procedure."  (*Ibid.*, citing *Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1113-1114, fn. 10 [procedure for refund of county property taxes in Rev. & Tax. Code §§ 5096 & 5097]; *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 77-78 [refund procedure in San Francisco Bus. & Tax. Reg. Code, § 6.15-1]; *Flying Dutchman*, *supra*, 93 Cal.App.4th at p. 1138 [same]; *Writers Guild*, *supra*, 77 Cal.App.4th at pp. 477-478 [L.A. Mun. Code, § 21.07].)

The County argues that section 3.56 includes a pay first requirement by providing that the tax becomes immediately "due and payable" upon the decision of the hearing officer.  (§ 3.56.130, subd. (C)(6).)  But the ordinance does not specify that the taxpayer must pay the tax *before appealing* the hearing officer's decision.  (Compare with S.F. Bus. & Tax. Regs. Code, § 6.15-4, subd. (a) ["Persons claiming they are aggrieved under the [Code] must prior to seeking judicial relief:  (1)  pay the amount of the disputed tax, penalty, and interest"]; *Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 92 ["The Ordinance adds in this regard that no suit for money, damages, or a refund may be brought against the City until a written claim therefor has been presented to the City and has been acted upon or deemed rejected"]; *Merchandising Concept Grp., Inc. v. California Unemployment Ins. Appeals Bd*. (2010) 181 Cal.App.4th 1274, 1280-1281 [statute required payment of tax and claim for refund before filing suit for refund].)

12

Indeed, quite the opposite is true: section 3.56.130, subdivision (C)(6) states there are no additional levels of administrative appeal following the hearing officer's decision, and the hearing officer's decision "shall also notify appellant of further rights to appeal under the Code of Civil Procedure." Consistent with the ordinance, the hearing officer ordered petitioners to pay $12,100 each, before informing petitioners that they "may challenge this order by filing a writ of mandate pursuant to California Code of Civil Procedure §§ 1094.5 and 1094.6 in the Calaveras County Superior Court within 90 days of the service of this order." Neither the ordinance nor the hearing officer's order explicitly required petitioners to pay the tax before petitioning for writ of mandate.

Additionally, no statute required petitioners to pay the tax before seeking writ relief. We ordered the parties to brief whether the cannabis cultivation tax could be properly characterized as a property tax, which would make the tax subject to the pay first requirement stated in Revenue and Taxation Code section 4807 ("No injunction or writ of mandate or other legal or equitable process shall issue in any . . . proceeding in any court against any county . . . to prevent or enjoin the collection of property taxes . . ."). But the parties agree, as do we, that the cannabis cultivation tax is a privilege tax, not a property tax. The cannabis cultivation tax was expressly intended to tax the *privilege* of cultivating cannabis, distinguishing it from a property tax, and liability to pay the tax arose upon a prospective cultivator's decision to exercise the privilege of cultivating cannabis. (See *Ingels v. Riley* (1936) 5 Cal.2d 154, 159 [property tax does not impose any condition or place any restriction on the use of property taxed; privilege tax imposed on the right to exercise a privilege]; *City of Huntington Beach v. Superior Court* (1978) 78 Cal.App.3d 333, 341 [privilege tax does not become a property tax simply because it is proportioned in amount to the value of the property used in connection with the privilege which is taxed]; § 3.56.030, subd. (H) [subjecting the tax to voter approval pursuant to Cal. Const., art. XIII C].) Accordingly, the tax was not imposed "merely by the ownership of property," as is characteristic of a property tax. (*Thomas v. City of East*

13

*Palo Alto* (1997) 53 Cal.App.4th 1084, 1088.)  The tax here is not a property tax subject to the statutory pay first requirement in Revenue and Taxation Code section 4807.

We do not dispute that "[t]he power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned." (*Modern Barber Coll. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 726 (*Modern Barber*).)  But here, the County did not invoke the remedy of a refund suit as the exclusive means of judicial review, and therefore there is no proper basis upon which to require petitioners to "pay first, litigate later."

III

*Administrative Mandate, Adequate Remedy at Law, and Exhaustion of Judicial Remedies*

A writ of administrative mandamus under Code of Civil Procedure section 1094.5 "will lie only to challenge the validity of a *final administrative adjudication* vested in an inferior administrative tribunal as the result of a proceeding when (1) a hearing is required, (2) evidence is required to be taken, and (3) discretion in the *determination of the facts* is vested in an administrative agency.  [Citations.]" (*Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 954-955 (*Sunrise*).)  "The inquiry for the issuance of a writ of administrative mandamus is whether the agency in question prejudicially abused its discretion; that is, whether the agency action was arbitrary, capricious, in excess of its jurisdiction, entirely lacking in evidentiary support, or without reasonable or rational basis as a matter of law.  [Citations.]  A prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law, if its decision is not supported by findings, or if its findings are not supported by substantial evidence in the record." (*Sierra Club v. County of Napa* (2004) 121 Cal.App.4th 1490, 1497.)

The proceeding before the hearing officer and subsequent decision satisfied the requirements of a final administrative adjudication.  Evidence was taken at the hearing, which was required by the ordinance, and determination of the facts was vested in the hearing officer.  (§ 3.56.130, subds. (C)(5) ["hearing officer shall issue quasi adjudicatory

14

findings, which shall be final and binding"], (C)(6) [hearing officer's determination is the final level of administrative appeal; finding shall notify taxpayer of further rights to appeal under the Code of Civ. Proc.].)

A. *Adequate Remedy at Law*

"A writ of mandamus . . . only issues when there otherwise is no speedy and adequate remedy at law. [Citations.]" (*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 672 (*County of Sacramento*).) Generally, paying a tax under protest and suing for a refund is considered an adequate remedy at law to review tax assessments on their merits, which obviates the need for a writ of mandamus. (See, e.g., *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 923 [judicial review of county assessment appeals board decisions regarding property tax assessment ordinarily limited to paying tax and suing in superior court for refund, relying on art. XIII, § 32]; *Star-Kist Foods, Inc. v. Quinn* (1960) 54 Cal.2d 507, 512 [mandate denied where statute authorized paying taxes under protest and suing for refund]; *Schoenberg v. County of Los Angeles Assessment Appeals Bd.* (2009) 179 Cal.App.4th 1347, 1355 [mandate not available to taxpayer with statutory authority to file refund action as a device for judicial review of assessment appeals board's decision on the merits, as distinguished from review of its ministerial duties or audits].)

However, mandamus may lie where the taxpayers challenge an administrative agency's failure to fulfill its administrative duties. (See, e.g., *Sunrise, supra*, 58 Cal.App.4th at p. 955 [mandate lies where administrative agency erroneously fails or refuses to decide factual issue, but court may not "step into the shoes of the agency and perform its function for it"]; *Flightsafety International Inc. v. Assessment Appeals Bd.* (2003) 105 Cal.App.4th 620, 628-629 [affirming trial court's issuance of writ requiring appeals board to perform its administrative duty]; *County of Sacramento, supra*, 32 Cal.App.3d at pp. 672-674 [assessment appeals board erroneously ruled it had no jurisdiction]; *Main & Von Karman Associates v. County of Orange* (1994) 23

15

Cal.App.4th 337, 343-344 [assessment appeals board used wrong methodology and refused to admit competent evidence; trial court directed to issue mandate commanding board to conduct further proceedings].)

In *Sunrise*, *supra*, 58 Cal.App.4th 948, a local assessment appeals board refused to hear an appeal regarding a property tax assessment on jurisdictional grounds. The plaintiffs petitioned for writ of mandate in the superior court against the assessor and the appeals board, asserting in part that the assessor abused his discretion in refusing to carry out his duty to correct an error, and the appeals board abused its discretion in failing to hear the appeal based on a lack of jurisdiction. (*Id.* at p. 953.) The trial court did not issue a writ compelling the appeals board to set aside its order denying the plaintiffs' application, and the appellate court reversed. The court recognized administrative mandate is available to compel an agency to hold a hearing where the agency is empowered to decide the factual issue in the first instance and refuses to do so. (*Id.* at p. 955.) The court observed, however, trial courts are not permitted to step into the shoes of the administrative agency and perform its function for it. (*Ibid.*) Because the appeals board had refused to exercise its own jurisdiction, the appellate court concluded the trial court should have issued the writ to compel the appeals board to act. (*Ibid*.)

The appellate court disagreed that the plaintiffs' proper remedy was a suit for refund. (*Sunrise*, *supra*, 58 Cal.App.4th at p. 961.) The court concluded, "remand to the [appeals board] to hear plaintiffs' appeal neither aids nor impedes their right to see a refund of taxes improperly collected. Correction of the base-year value figure does not automatically entitle the taxpayer to a refund. [Citation.]" (*Ibid.*) Later the court added: "The writ . . . will do nothing except order the [appeals board] to perform its duty to hear the appeal on its merits. The Assessor is not restrained from collecting taxes." (*Ibid.*)

In *County of Sacramento*, *supra*, 32 Cal.App.3d 654, the county brought an action for writ of administrative mandate after the assessment appeals board cancelled an assessment, refunded the tax paid, and deleted the taxpayer's liability from the tax rolls.

16

This court recognized that, typically, "allowing the taxpayer to pay the disputed tax under protest and to sue for refund, is such an adequate remedy and mandate is denied." (*Id.* at p. 672.) In the "unusual situation" presented in that case, however, the county lacked an adequate remedy at law because it could not simply pay the tax and request a refund. This court concluded a writ of mandate should issue from the trial court to order the assessment appeals board to perform its administrative duty. (*Id.* at p. 673.)

As we have discussed, there is no pay first requirement here, and the hearing officer's decision is a final decision for purposes of equitable relief under Code of Civil Procedure section 1094.5. We further conclude that, in the situation presented here, the refund procedure and suit for refund is not a complete, speedy, and adequate remedy at law to address petitioners' allegations that the hearing officer prejudicially abused its discretion, acted in excess of, or without jurisdiction, and failed to provide petitioners with a fair trial.

Initially, it is not clear the refund procedure is a remedy available to petitioners. The refund procedure provides: "A person *licensed* to engage in commercial cannabis activity may claim a refund or take as credit against taxes collected and remitted any amount overpaid when it is established, in a manner prescribed by the tax collector, that a refund is due." (§ 3.56.150, subd. (B); italics added.) Petitioners undoubtedly filed registration forms for the privilege to cultivate cannabis on their properties.[7] But petitioners' applications were never approved, and therefore under the plain language of the ordinance, petitioners never became "licensees."[8] However, the parties do not raise

---

[7] Section 17.95.150, subdivision (A) defines a "Registrant" as "an individual applying on behalf of him/herself or as the authorized agent of a business entity for a medical cannabis cultivation site registration in conformance with this Chapter."

[8] Section 3.56.020 defines " 'Licensee' or 'registrant' " as "any person who is required to obtain[ ] a cultivation registration . . . , or any person required to obtain an administrative use permit . . . , or any person who is otherwise required to obtain a permit, registration,

17

this issue in their briefing, and the issue was not addressed by the hearing officer or the trial court.

But even if the administrative refund procedure is not available to petitioners as registrants, the County observes that petitioners could pay the tax and sue for a refund of taxes paid under the Government Claims Act (Gov. Code, §§ 910 et. seq.). (See *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 253 [Government Claims Act authorizes class claims against local governments in the absence of a specific refund procedure set forth in an applicable governing claims statute]; *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 620-621 [local ordinance is not an "applicable governing claims statute" for purposes of Government Claims Act; taxpayers may sue for refund of unlawful tax under the Act].) While *Ardon* and *McWilliams* construe the Government Claims Act as authorizing tax refund lawsuits on a class basis where such suits are not provided for by the applicable local ordinance, we agree petitioners could sue for refund under the Act. Accordingly, we recognize that petitioners were procedurally able to pay the tax and sue for a refund.

While petitioners were able to pay the tax and sue for a refund, we conclude that procedure is not an adequate remedy at law to address petitioners' claims regarding alleged abuses of discretion and fundamental unfairness of the administrative proceedings. The petition alleges the hearing officer's order is "rife with legal error," and the administrative procedures involved "the flagrant breach of fundamental fairness and the shocking offense of every requirement of equity by [the County] in its tax assessment

---

certificate or other entitlement under any permanent successor cannabis ordinance adopted by the board of supervisors, or any cannabis ordinance initiated and passed by the voters of Calaveras County and which becomes the exclusive local law governing commercial cannabis in Calaveras County." Section 17.95.150, subdivision (R) defines a "Licensee" as having the same meaning as former Business and Professions Code section 19300.5, subdivision (ab), which defined "licensee" as "a person issued a state license under this chapter to engage in commercial cannabis activity." (Stats. 2015, ch. 689, § 4.)

18

and appeal procedures." In the absence of a pay first requirement barring prepayment equitable relief, we conclude paying the tax, requesting a refund (to the extent the refund procedure applies to petitioners), and suing for refund of taxes paid is not adequate to address petitioners' claims regarding the procedural deficiencies in the administrative proceedings. We recognize the trial court is not empowered to step into the shoes of the administrative agency and exercise its discretion in place of that of the agency (*Sunrise*, *supra*, 58 Cal.App.4th at p. 955), but if, as the petition alleges, the hearing officer prejudicially abused his discretion, mandate is appropriate to compel the hearing officer to comply with his administrative duties in the first instance.

B. *Exhaustion of Judicial Remedies Doctrine*

Petitioners assert they lack an adequate remedy at law because, had they failed to timely petition for writ of mandate following the hearing officer's decision, the decision would have had preclusive effect in subsequent civil proceedings. They rely on the exhaustion of judicial remedies doctrine, which provides that "unless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 69-70 (*Johnson*).)

"This requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. [Citation.] Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation.] Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing administrative action.' [Citation.]" (*Johnson*, *supra*, 24 Cal.4th at p. 70.) The doctrine only applies to decisions that are "of a sufficiently judicial character to support collateral estoppel." (*McDonald v. Antelope Valley Comm. College Dist.* (2008) 45 Cal.4th 88, 113.) The doctrine of exhaustion of judicial remedies has two

19

justifications: "(1) the interest in according proper respect to an administrative agency's quasi-judicial procedures by precluding a party from circumventing the established process for judicial review of such decisions by means of a petition for administrative mandate; and (2) 'providing a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions.' [Citation.]" (*Johnson*, at p. 70.)

The County contends there is no tension between the doctrine of exhaustion of judicial remedies and the pay first requirement because petitioners could have paid the tax, requested a refund, and then petitioned for writ of administrative mandate within the 90 days provided by Code of Civil Procedure section 1094.6, subdivision (b). This argument misses the mark. First, as we have discussed, there is no pay first requirement here. Second, the County's argument assumes that equitable relief is appropriate provided petitioners first pay the tax and then request a refund. But a writ of mandate lies only where petitioners *lack* an adequate remedy at law. (See *City of Anaheim*, *supra*, 179 Cal.App.4th at p. 831; *County of L.A. v. Tax Appeals Bd. No. 2* (1968) 267 Cal.App.2d 830, 833 [where no express statutory provision has been made for reviewing the orders of administrative agencies, or other bodies exercising quasi-judicial powers, it is clear that such review is provided in California by Code of Civ. Proc., § 1094.5]; *Security-First Nat. Bank v. Board of Supervisors* (1950) 35 Cal.2d 323, 327 [writ of mandate not available because petitioner had adequate remedy at law by action for refund]; *Modern Barber, supra,* 31 Cal.2d at p. 724 [were it not for statute expressly prohibiting writ of mandate to prevent or enjoin collection of taxes and remedy of refund suit expressly been made exclusive remedy of obtaining judicial review, mandamus might lie in the instant case].) Accordingly, we disagree with the County's argument that petitioners have an adequate remedy at law in the form of paying the tax, requesting a refund, and petitioning for writ of mandate.

However, we disagree with petitioners that the preclusive effect resulting from their hypothetical failure to petition for writ of mandate leaves them without an adequate

20

remedy at law. Petitioners' argument presumes that, even where mandamus does not lie because they have an adequate remedy at law, their failure to petition for writ of mandate will have preclusive effect in subsequent legal proceedings. But where mandamus does not lie because petitioners have an adequate remedy at law, a petition for writ of mandate is not " 'the exclusive *judicial* remedy for reviewing administrative action.' " (*Johnson*, *supra*, 24 Cal.4th at p. 70.) Indeed, not only is mandamus not the *exclusive* judicial remedy in that circumstance, it is not a remedy at all. Petitioners present no authority for the proposition that failing to pursue an unavailable judicial remedy will result in the administrative proceeding having preclusive effect in subsequent judicial proceedings.

Nevertheless, based on our discussion *ante*, we conclude petitioners lack an adequate remedy at law, and accordingly we reverse the trial court's order granting the County's demurrer with respect to petitioners' petition for writ of mandate.[9]

IV

*Declaratory Relief*

Petitioners contend their action for declaratory relief survives demurrer even if their petition for writ of mandate is properly barred. They assert declaratory relief is available to challenge an agency's interpretation of the statutes it enforces even where an action to enjoin the collection of the tax is barred.

Code of Civil Procedure section 1060 provides: "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, *in cases of actual controversy* relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court . . . ." (Italics added.) " 'Thus, declaratory relief

---

[9] Because we agree with petitioners' argument that they were not required to pay the tax before petitioning for writ of mandate, we do not address their arguments the County must be equitably estopped from arguing for the application of the pay first, litigate later doctrine, and the county's ordinance is preempted by federal law.

is appropriate only where there is an actual controversy, not simply an abstract or academic dispute.' [Citations.]" (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 746.)

Declaratory relief operates prospectively to declare future rights, and while " 'it is no objection that past wrongs are also to be redressed,' " there is no basis for declaratory relief where *only* past wrongs are involved. (*Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 407.) "The purpose of a judicial declaration of rights in advance of an actual tortious incident is to enable the parties to shape their conduct so as to avoid a breach. '[Declaratory] procedure . . . serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citations.]" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.) Accordingly, "[i]t is settled that an action for declaratory relief is not appropriate to review an administrative decision." (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249.) "A declaratory relief action is an appropriate method for obtaining a declaration that a statute or regulation is facially unconstitutional," but administrative mandamus is "the proper and sole remedy" where a local agency's application of the law is at issue. (*Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 154, 155.)

Petitioners rely on *Pacific Motor Transit Co. v. State Bd. of Equalization* (1972) 28 Cal.App.3d 230 for the proposition that declaratory relief is available to challenge a taxing agency's interpretation of the statutes it enforces, but that case is inapposite. *Pacific Motor* involved a declaratory relief action by trucking firms against the State challenging the validity of an administrative rule and its application to them. But the issue there was whether the taxpayers could seek judicial determination as to the validity of a regulation as specifically authorized by statute (former Gov. Code, § 11440 ["Any interested person may obtain a judicial declaration as to the validity of any regulation by

22

bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure . . .”]), where another statute proscribed judicial interference in the tax collection process (Rev. & Tax. Code, § 10276 [“No injunction of writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this State or against any officer of the State to prevent or enjoin the collection under this part of any license tax or other amounts sought to be collected by the board”]). (*Pacific Motor*, at p. 236.) The court concluded the statutes were not in conflict; the trucking firms could seek judicial determination as to the validity of the questioned regulation provided the relief did not “ ‘prevent or enjoin’ or otherwise hamper present or future tax assessment or collection effort against the plaintiff or anyone.” (*Ibid.*)

Unlike *Pacific Motor*, here no statute authorizes petitioners to seek declaratory relief. Instead, declaratory relief is not available to address the past wrongs asserted by petitioners. To the extent petitioners’ complaint for declaratory relief seeks review of the hearing officer’s decision, such review is not appropriate. Moreover, as we will explain, because the cannabis cultivation ordinance was repealed, there is no reason for the trial court to rule on the validity of the ordinance prospectively.

We ordered the parties to brief whether the repeal of the ordinance regulating cultivation of commercial cannabis rendered petitioners’ claim for declaratory relief moot. Petitioners assert their declaratory relief action is not moot because the repeal of the cultivation ordinance was not retroactive and chapter 3.56 was not repealed, meaning they were not relieved of their tax liabilities. However, as we have discussed, declaratory relief is not appropriate to address past wrongs.

We conclude petitioners’ complaint for declaratory relief, to the extent it sought a determination of the prospective rights and obligations of the parties, was rendered moot by the repeal of the marijuana cultivation ordinance. A claim for declaratory relief “ ‘becomes moot when some event has occurred which “deprive[s] the controversy of its

23

life." [Citation.] The policy behind a mootness dismissal is that "courts decide justiciable controversies and will normally not render advisory opinions." ' [Citations.] The voluntary cessation of alleged wrongful conduct destroys justiciability of a controversy and renders an action moot unless there is a reasonable expectation the allegedly wrongful conduct will be repeated." (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1157.) "The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.]" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.)

We recognize that the taxing ordinance--section 3.56--was not repealed, but the repeal of section 17.95 demonstrated irrefutably that enforcement of section 3.56 will not resume. (*Covenant Media, Cal. v. City, Huntington Park* (C.D. Cal. 2005) 377 F.Supp.2d 828, 834.) Accordingly, any determination of the prospective rights and obligations of the parties with respect to the interpretation of section 3.56 will only have the effect of acting as judicial review of the administrative decision.

The cases relied upon by petitioners are inapposite. In *Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288 at page 298, the plaintiffs brought a California Environmental Quality Act (CEQA) challenge to the construction of a prison that the court dismissed as moot following the Legislature's passage of a bill, applying retroactively, that exempted the proposed prison from CEQA compliance. Petitioners do not explain how *Sagaser* affects our conclusion here.

Petitioners also rely on *Sanks v. Georgia* (1971) 401 U.S. 144 for the proposition that an appeal is not moot if a repealed law could be applied. In *Sanks*, the high court declined to adjudicate the issues presented in the case, but did not do so on the basis that the case was moot. (*Id.* at pp. 150-151.) The court recognized that the appellants could conceivably be subjected to the requirements of the former statutes on remand. (*Id.* at p. 151.) But as we have discussed, here petitioners seek declaratory relief in practical effect

to review the hearing officer's decision, which is inappropriate. To the extent that petitioners seek a prospective determination of the rights and obligations of the parties, petitioners present no evidence suggesting that the County is continuing to assess taxes based on its interpretation of the cannabis cultivation tax ordinance.

## DISPOSITION

The judgment of dismissal with respect to petitioners' petition for writ of mandate is reversed. In all other respects, the judgment is affirmed. The parties are ordered to pay their own costs. (Cal. Rules of Court, rule 8.278(a) & (b).)


_____/s/_____
Duarte, J.


We concur:


_____/s/_____
Murray, Acting P. J.


_____/s/_____
Krause, J.


25